## Keys *versus* Johnson.

1. Brokers are persons whose business it is to bring buyer and seller together; they need have nothing to do with negotiating the bargain.

2. A broker has earned his commission when he procures a party with whom his principal is satisfied and who actually contracts for the property at a price satisfactory to the owner.

3. He must establish his employment either by previous authority or by the acceptance of his agency and adoption of his acts, and that the agency was the procuring cause of the sale.

4. When a broker authorized to sell at private sale, has commenced a negotiation, the owner cannot, pending the negotiation, take it into his own hands and complete it, either at or below the price limited and then refuse to pay the commissions.

February 28th 1871. Before Thompson, C. J., Agnew, Shars-wood and Williams, JJ. Read, J., at Nisi Prius.

Error to the District Court of *Philadelphia:* No. 275, to January Term 1870.

This was an action of assumpsit brought, September 9th 1868, by Henry Johnson against William W. Keys, for the recovery of compensation as a broker for effecting the sale of real estate of the defendant.

On the trial, October 15th 1869, before Thayer, J., the plaintiff gave in evidence a letter, dated November 12th 1867, from the defendant, in which he says to the plaintiff, "My farm at Penn Square, Montgomery county, I will sell on terms to suit the purchaser, as follows." The letter then describes the farm and its improvements; expresses a willingness to sell "as a whole or divided," describing the parts and naming the price for each; and concludes, "If one purchaser takes the whole the price will be $16,000."

He gave evidence further, that the defendant called on him to sell his farm for 16,000. The property was advertised. Mr. Hazleton called, examined plaintiff's list, saw this property, which suited him, and plaintiff described the property to him; Hazleton wished to exchange city property; plaintiff said defendant would not exchange, as he wanted money; Hazleton obtained defendant's address from plaintiff, and called to see defendant; after negotiating with him about a week he took the farm at $17,000, giving him in exchange a house in Philadelphia.

On the 17th of November 1868 defendant wrote to plaintiff that he had disposed of his farm, and requested him to send "bill of advertising and expenses you may have incurred."

The defendant testified that he endeavored to negotiate a loan, and having failed, instructed the plaintiff to sell his farm "for $16,000 cash." Plaintiff having failed to sell, Hazleton called on defendant in the subsequent March to inquire if he would exchange for city property; he declined at first, but afterwards

[Keys v. Johnson.]

made an exchange for a house on Green street, and a mortgage of $2000 on the farm.

The defendant asked the court to charge:—

"1. That if the jury believed from the evidence that the defendant placed his property in the hands of the plaintiff for the purpose of selling exclusively for cash, and that the plaintiff failed to sell, he cannot recover.

"2. That if a real estate broker is engaged to sell for cash, and afterwards the owner effects an exchange, the broker cannot recover a commission for his services in such an exchange, unless he shows that he was expressly engaged to make the exchange notwithstanding he may have informed one of the parties that his property was offered for sale for cash, and the party afterwards, of his own motion, called on the owner and effected an exchange."

The court charged:—

"To entitle a broker to a commission he must procure a purchaser who is accepted by the vendor. The plaintiff cannot therefore recover unless the service which he rendered was the efficient cause of the sale.

"But I am requested to instruct you that if a broker is employed to effect a sale for cash, and finds a purchaser who is willing to give land, which is accepted by the vendor, the broker has no right to compensation. I decline to say that such a conclusion follows necessarily as a matter of law."

The verdict was for the plaintiff for $372.01.

The defendant took a writ of error. He assigned for error,

1 and 2. The refusal of his points.

3. Submitting to the jury the question of plaintiff's right of recovery for an exchange of properties when there was no evidence of a contract of such employment between the parties.

*A. Briggs* (with whom was *J. L. Caven*), for plaintiff in error, cited Earp v. Cummins, 4 P. F. Smith 394.

*G. Biddle*, for defendant in error, cited Smith on Contracts 170; Hatch v. Pursell, 1 Foster 544; Jacobson v. Le Grange, 3 Johns. R. 200; Oatfield v. Waring, 14 Id. 188.

The opinion of the court was delivered, March 6th 1871, by

SHARSWOOD, J.—Brokers are persons whose business it is to bring buyer and seller together. They need have nothing to do with the negotiation of the bargain: Inslee v. Jones, Brightly's N. P. Rep. 76. A broker becomes entitled to his commissions whenever he procures for his principal a party with whom he is satisfied, and who actually contracts for the purchase of the property at a price acceptable to the owner: Glentworth v. Luther, 21 Barb. 145. He must establish his employment as broker,

[Keys *v.* Johnson.]

either by previous authority, or by the acceptance of his agency and the adoption of his acts, and also must prove that his agency was the procuring cause of the sale: and when, being duly authorized to sell property at private sale, he has commenced a negotiation with a purchaser, the owner cannot, while such negotiation is pending, take it into his own hands and complete it either at or below the price first limited, and then refuse to pay the commissions: Chilton *v.* Butler, 1 E. D. Smith 150. "If vendors were permitted," said Woodruff, J., "to employ brokers to look up purchasers, and call the attention of buyers to the property which they desired to sell, limiting them as to the terms of sale, and then while such purchasers were negotiating, take the matter into their own hands, avail themselves of the labor, services and expenses of the broker in bringing the property into market, and accomplish a sale by an abatement in the price, and yet refuse to pay the broker anything, the business of a broker would not be worth pursuing, gross injustice would be done, every unfair and illiberal vendor would limit his property at a price slightly above the market, and make use of the broker to bring it into notice, and then make his own terms with the buyers who were in reality procured by the efforts of the agent."

There was no evidence in this cause from which the jury would have been justified in drawing the conclusion that the employment of the plaintiff below as the broker of the defendant was to sell exclusively for cash. A price was limited, and it seems that Keys had told Johnson that he would not exchange for city property, as he wanted money. Had he continued of the same mind, no bargain, in all probability, would have been made and no commission earned. But without revoking the broker's authority —or withdrawing the property from his hands—he determined to make an exchange. His letter to Johnson, November 12th 1867, contained these words: "I will sell on terms to suit the purchaser." It was no more legitimately to be inferred that Johnson was not to receive any commission if these terms were varied so as to accept a mortgage or other property in payment, than that such a result would follow if Keys came down a few hundred dollars in the price. If this was what was meant by the defendant's points there was no evidence of any such a contract. The learned judge very properly declined to instruct the jury that if a broker is employed to effect a sale for cash and he finds a purchaser who is willing to give land, which is accepted by the vendor, the broker has no right to compensation. On the contrary, if the broker procures a person with whom a bargain is made upon any terms, he is entitled to his commission unless there is something special in the contract of employment, or the circumstances of the case, to preclude him.

Judgment affirmed.