## SAMUEL HEFFNER v. H. A. CHAMBERS.

ERROR TO THE COURT OF COMMON PLEAS OF SCHUYLKILL COUNTY.

Argued February 17, 1888—Decided October 1, 1888.

1. Where a contract, giving authority to an agent to sell land for the principal, provides that if the agent's efforts bring a purchaser directly to the principal, the latter on a sale made by himself will allow the agent a stipulated commission, the agent becomes entitled to his commission upon proof that he drew the attention of a purchaser to the land and was the cause of his application to the owner.

2. Though the answer to a point is not responsive thereto and is therefore erroneous, yet where there is nothing in the evidence to justify the submission of the facts assumed in the point, and the answer correctly states the rule as to the question actually raised by the evidence, the plaintiff in error suffers no injury and cannot complain.

3. It is the duty of a judge to instruct the jury upon every question of law involved in a case trying; yet he is not required to answer points raising questions in thesi merely, or which rest upon facts assumed or as to which there is no evidence sufficient for submission: per Mr. Justice WILLIAMS.

Before GORDON, C. J., PAXSON, GREEN, CLARK and WILLIAMS, JJ.; TRUNKEY and STERRETT, JJ., absent.

No. 378 January Term 1887, Sup. Ct.; court below, No. 49 July Term 1884, C. P.

Statement of Facts.

On May 9, 1884, an action was brought by Harman A. Chambers against Samuel Heffner to recover commissions claimed for services alleged to have been rendered in the sale of a tract of coal land for the defendant. The defendant pleaded, non-assumpsit, payment, payment with leave, etc.

At the trial on September 23, 1886, the facts appearing, so far as material, were, that on January 13, 1882, a contract was signed by the parties of the following form:

POTTSVILLE, January 13, 1882.

MR. H. A. CHAMBERS.

Sir: I hereby authorize and empower you to sell or solicit and bring or send to me purchasers to whom I may sell my farm or tract of coal land, in warrant name, John Middleton; situate in and adjoining Minersville, Pa., containing 327 acres of coal, together with the surface, except about 90 acres heretofore sold, at the price of two hundred dollars an acre, or as much less as I may agree to take; and as compensation for your efforts and services I will pay you 10 per cent of the price agreed upon for the sale of the property. I feel that my extreme age (82 years) will not admit of my giving a power of attorney or exclusive authority to any one, by which I may be prevented from selling if I have a good opportunity, but my proposition above mentioned I will hold good and binding until the property is sold.

Believing that your efforts to sell and make known the value of my property will have a tendency to bring increased offers heretofore made to me, or customers unknown to you, I hereby agree that if I sell to such parties I will pay you a commission of 5 per cent of the amount for which I may sell the same. This proposition made and accepted December, 1881, and signed January 13, 1882. SAMUEL HEFFNER,

Accepted, H. A. CHAMBERS.

It being understood and agreed that to entitle said Chambers to the commissions herein provided for, the price for which the property is sold shall exceed Forty Thousand Dollars. H. A. CHAMBERS,

SAMUEL HEFFNER.

The parties met again on January 19, 1883, when an endorsement was made upon the foregoing paper, to wit:

And now, January 19, 1883, the price named by Mr. Samuel Heffner is one hundred and fifty dollars per acre, strict measure, or fifty thousand dollars for the whole of the within mentioned tract of land if taken without measurement; it being understood that the within mentioned tract of land is to be submitted to the Philadelphia & Reading Coal & Iron Company by the said H. A. Chambers, and if the said company purchase and desire to leave one half of the purchase money remain, secured by mortgage on the land, they will be allowed to do so; the commission for salary to be as named in the within agreement.                    SAMUEL HEFFNER.

The plaintiff, in his case in chief, identified the foregoing writings and testified to efforts made by him to sell the land to Charles M. Hall and a number of other parties; that Hall was the first person he saw about the sale of the land. On cross-examination, the witness was questioned as to what passed between him and the defendant on January 19, 1883: Q. Is it not true that Heffner said, "although there was a gentleman here who has offered me $50,000, and wants me to execute the deed and put it into a party's hands for 30 days, you shall have till February 1st to sell my land? A. He did not say till February 1st; there was no limit to the time when the Reading company—" It was further shown that on March 17, 1883, Charles M. Hall met Mr. Heffner at Pottsville and made a contract with him personally for the purchase of the land for $150 per acre, payable in instalments; and on July 6, 1883, Hall's interest in the contract was purchased by the Philadelphia and Reading Coal & Iron Co.

Samuel Heffner, the defendant, called on his own behalf:

The defendant now proposes to prove by Samuel Heffner in contradiction of the testimony of H. A. Chambers, that on January 19, 1883, Mr. Chambers came to Mr. Heffner and wanted him to change the terms of the contract and allow him to sell the land for $150 per acre, the price in the original contract being limited to $200 an acre, or to sell the land for $50,000, if taken without measurement or survey, and to offer the land at the price of $50,000, if sold in a lump, or $150 per acre, if sold by the acre, to the Philadelphia and Reading Coal and Iron Company, with the liberty to leave one half of the

Statement of Facts.

purchase money to be secured by a mortgage upon the land, the original contract requiring the payment of $200 per acre, or $65,000 for the whole, in cash. This to show that by an oversight or mistake of Mr. Chambers, who was the party that wrote this supplemental contract, or by a fraudulent omission of his, he left out of this supplementary contract a very material stipulation, that it was agreed between them in consideration of the concession and alteration of the original contract made by Mr. Heffner, that Chambers' right to sell the land was to terminate on the first day of February following the date of this supplemental agreement; that if he did not sell it before the first day of the following February, the contract was to be at an end, and Heffner was at liberty to sell it to whom he pleased.

Objected to by plaintiff's counsel, generally, that the agreement between Heffner and the plaintiff must speak for itself, and that all negotiations, conversations and considerations which entered into it were merged in and concluded by the writing as signed and executed by the parties; and that no parol evidence of any matters that occurred prior to and at the time of the execution and delivery of the agreement, is competent to change or alter its effect.

By the court: On the question that there is an allegation of fraud, either that the omission was a fraudulent one or that it was omitted by accident or mistake, and that the plaintiff was the party who wrote this agreement, we think under our general line of authorities it would be admissible; and, in the case of Shepler v. Scott, 85 Pa. 329, where the instrument was under seal, and the very question of time was alleged to have been omitted, the evidence was received and the case sustained. We will therefore permit the defendant to testify to the alleged omission as to the time of February 1st, if such is the case.

Q. If at the time he came and got you to sign this other paper which you notice authorizes a different sale, etc., was there anything said between you and him about how long he should have the right to sell this land? A. Yes; after we agreed on this amount, he wanted me then to give him a chance to sell it at $40,000; I refused that and told him I had a party to come which I knew would take it at $50,000; then we agreed I would give him this, but no longer time than the 1st

of February, and he made this on the paper, and I wanted him to make it on my paper; he said it was not necessary and he run off, went much in a hurry.

At the close of the evidence, the court, BECHTEL, J., after reviewing the evidence, charged the jury and answered certain points presented as follows :

You will notice, and no doubt have noticed, even before this, what the claims of these two parties here are. The defendant claims, first, that there was a limitation agreed upon at the time the agreement of January 19, 1883, was made, but which was omitted either by fraud, or by mistake, or by accident, from that writing. Second, the defendant claims that the plaintiff is a broker, a real estate broker, and was such during the time he was engaged in the sale of this particular tract of land, the latter part of 1882, or at least during the year 1883, and that he, being a resident of the city of Philadelphia, had no license. Third, the defendant claims that the plaintiff did not sell or procure or bring about the sale of this land, and that for these three reasons the plaintiff cannot recover.

Now the plaintiff claims, first, that there was no limit of time agreed upon when the writing of January 19, 1883, was made, and that nothing has been omitted from that writing, but that the writing itself is the entire contract between these parties, and speaks for itself. Second; the plaintiff says he was not a broker, and not engaged as a broker in the real estate business; that while he bought land in his own right and sold land, and in this instance contracted to sell land in which he had no interest, yet it was a special arrangement, and that he was not a real estate broker at this time or any time. Third; he claims he earned the commissions specified in the writing by the sale of the land or by being the procuring cause of the sale of the land, and that therefore he is entitled to a verdict for the commissions.

We will first direct your attention to the alleged omission in regard to the writing of January 19, 1883. The defendant, Samuel Heffner, testifies that at the time the writing of January 19, 1883, was made, it was agreed between him and the plaintiff, H. A. Chambers, that it should be limited to the first of February, 1883, and that after that time the plaintiff's right

should cease and his power or authority should terminate. Heffner testifies that this was a part of their agreement of January 19, 1883, but claims that it was omitted by fraud, accident or mistake. The plaintiff denies this in every respect, and testifies that no such limit was spoken of or agreed upon at all, and consequently claims that nothing whatever has been omitted in the drafting of said contract or writing. In determining this matter you must consider all the testimony in the case.

[The paper or writing is with the plaintiff. It contains no such limit as to time, but it now reads as the plaintiff claims it was agreed upon and made. The burden therefore, rests with the defendant to satisfy you, by clear, precise and indubitable evidence, that their contract embraced the terms or limit of time which he, the defendant, claims it did, and that it was omitted in the drawing of the paper. If, then, you find from all the evidence before you, keeping in view the measure of proof to which we directed your attention, that the contract or agreement as these parties agreed to it on January 19, 1883, included a limit by which it was to terminate as claimed by the defendant, after February 1, 1883, after which the plaintiff's right should cease, then you should find a verdict for the defendant.][1] If, however, you find there was no such limit agreed upon between these parties, but that their entire contract is fully expressed in the writing in evidence before you, then we instruct you as follows, in relation to these writings:

The agreement or writing of January 13, 1882, as we understand it, provides that, if the plaintiff sells the defendant's land therein named, he shall receive a commission of 10 per cent for so doing, provided the price at which it was sold exceeds $40,000; or, if the plaintiff by his efforts and exertions furnishes or procures a purchaser, and the defendant, Heffner, sells his land to such party at a price exceeding $40,000, then the plaintiff shall receive a commission of 5 per cent upon such sum. By the writing of January 19, 1883, the limit as to price is changed to $150 per acre, or $50,000; and Heffner, the defendant, agreed to have the land submitted to the Reading Coal and Iron Company and also agreed to accept a mortgage for one half of the purchase money. While the proposition

contained in the writing of January 13, 1882, is to remain good and binding until the property is sold, yet it is not to be so understood as to prevent the defendant, Heffner, from selling, if a good opportunity offered.

A real estate broker is one who engages in the purchase and sale of real estate as a business, and so holds himself out to the public in that character and capacity. A person whose business or occupation is not that of a real estate broker, may receive compensation for his services rendered in buying or selling real estate belonging to another, and any person may lawfully employ one who is not a real estate broker, to buy or sell real estate.

Take, then, all the testimony before you, examine it carefully, honestly and impartially, and ascertain what does it prove. Does it show that the plaintiff was a real estate broker within the definition above given to you during the time he was engaged in the selling of the Heffner land? If it does, and you further find that he had no license, then you should find for the defendant. Or, if you find that the plaintiff neither sold the defendant's land nor procured or furnished a party to whom Heffner sold the land, then you should find for the defendant. If, upon the other hand, you should find from all the testimony before you, and our instructions as to the law, that the plaintiff did sell the land of the defendant in accordance with the writings or that he was the procuring cause of the sale, then he would be entitled to your verdict for 10 per cent of the sum for which the land was so sold, with interest thereon from the time it became due and payable under their contract. [Or, if you find that the plaintiff, by his efforts and exertions, furnished or procured a purchaser to whom Heffner, the defendant, sold the lands, then you should find for the plaintiff for five per cent of the sum for which the land was then sold, with interest thereon from the time it became due and payable.] [2]

The defendant has requested us to instruct you as follows:

4½. If the jury believe that on January 19, 1883, at the time Chambers got Heffner to agree to the endorsement on the back of the original power of attorney, Heffner notified Chambers that he had an offer for the sale of his land, but that he would not do anything about selling his land until the first of

Arguments.

February following, the notice to Chambers amounted to a revocation of his authority, so that Heffner might sell his land after the first of February, if Chambers had not previously sold the same, without liability to pay any commissions to Chambers; and the defendant is entitled to a verdict.

Answer: The writing of January 19, 1883, shows that the defendant assented to the submission of the land to the company, and there is no limit of time in that writing within which the company was compelled to determine the question of whether or not they would purchase the land. Whether there was a limit of time agreed upon and omitted from the writing by fraud, accident or mistake, we have heretofore submitted to you and instructed you in relation to the same, and your attention is now directed to that instruction. We believe that the defendant had the right to make sale of his land under the writings before you, but if he sold to a party who was procured or furnished through the efforts and exertions of Chambers, if he, Chambers, was the procuring cause of the sale, then he is entitled to a commission, either of 5 or of 10 per cent, as we have heretofore instructed you.[6]

The jury returned a verdict in favor of the plaintiff for $2,936.17. A motion for a new trial and in arrest of judgment was overruled, and judgment entered on the verdict. The defendant thereupon took this writ assigning as error, inter alia:

1, 2. The parts of the charge embraced in [ ][1] [2]

6. The answer to defendant's point, 4½ [6]

*Mr. J. W. Moyer* (with him *Mr. S. H. Kaercher, Mr. Nicholas Heblich* and *Mr. J. W. Ryon*), for the plaintiff in error:

1. There is a preliminary question for the court, in all cases, not whether there is literally no evidence, but whether there is any that ought reasonably to satisfy the jury that the fact sought to be found is established. If there is evidence from which the jury can reasonably find the question for the party on whom the burden of proof rests, it should be submitted; if not, it should be withdrawn from the jury: Hyatt v. Johnson, 91 Pa. 196; Cover v. Manaway, 115 Pa. 338; Earp v. Cummins, 54 Pa. 394; Keys v. Johnson, 68 Pa. 42.

2. The power to the plaintiff to sell, was a mere naked

power not coupled with an interest, constituting a mere agency concerning the principal alone; and it was, therefore, in its nature revocable, even though it contained an express declaration of irrevocability. An interest in the proceeds, to arise as compensation for executing the power, will not make it revocable. To make an agreement for irrevocability in a power to transact business binding, there must be a consideration independent of the compensation to be rendered for the services to be performed: Blackstone v. Buttermore, 53 Pa. 266. That case is almost identical with this one, and will rule it. The cases cited are: Hunt v. Rosmanier, 8 Wheat. 476, 477; Story on Agency, §§ 463–5, 468, 476–7; Paley on Agency, 155; 1 Pars. Cont. 59; Irwin v. Workman, 3 W. 357; Smyth v. Craig, 3 W. & S. 20.

3. In defendant's point 4½, he prayed for instructions as to the effect of his notice to the plaintiff on January 19, 1883, that he would wait till February 1, 1883, before proceeding with his own negotiations. The answer of the court was not only not responsive and erroneous in itself, but was misleading to the jury: Coffin v. Landis, 46 Pa. 426. The mistaken idea that the defendant's notice of revocation amounted to nothing, because not embodied in the endorsement made on the power of attorney, pervades the whole charge. That, taken singly, no part of a charge may be pronounced to be clearly erroneous, and yet that, as a whole, it may mislead, is a matter familiar to the minds of all lawyers and judges and is cause for reversal: Wenger v. Barnhart, 55 Pa. 300; Reeves v. Railroad Co., 30 Pa. 460.

*Mr. James Ryon*, for the defendant in error:

1. The court charged the jury that whether there was a limit or not, made at the time of the agreement of January 19, 1883, but not inserted therein, was a question of fact for the jury under all the evidence, and that question was submitted fairly and impartially. And the court charged that where it is attempted to be shown by parol that the operation of the agreement was to be limited to February 1st, the evidence thereof must be clear, precise and indubitable, language substantially the same as that sustained in Shepler v. Scott, 85 Pa. 329. It is error to submit a question of fraud to the jury,

to overturn a written instrument, upon slight parol evidence : Penn. R. Co. v. Shay, 82 Pa. 198; Stine v. Sherk, 1 W. & S. 195; Erwin v. Shoemaker, 8 W. & S. 75; Dean v. Fuller, 40 Pa. 474. Moreover, the case was defendant's oath against plaintiff's oath, with the agreement as it was written with the plaintiff. The evidence was insufficient to submit to a jury, under the rule in Phillips v. Meily, 106 Pa. 536; Campbell v. Patterson, 95 Pa. 447.

2. A broker becomes entitled to his commission whenever he procures for his principal a customer with whom he is satisfied, and who actually contracts for the purchase of the property at a price acceptable to the owner: Key v. Johnston, 68 Pa. 42; Glentworth v. Luther, 21 Barb. 145; Chilton v. Butler, 1 Smith E. D. 150; Clendenon v. Pancoast, 75 Pa. 213; Earp v. Cummins, 54 Pa. 394; Reed v. Reed, 82 Pa. 420; Shepler v. Scott, 85 Pa. 329; Edwards v. Goldsmith, 16 Pa. 50.

OPINION, MR. JUSTICE WILLIAMS :

This action was brought by Chambers, plaintiff below, to recover commissions on the price at which certain coal lands in the county of Schuylkill were sold by Heffner, the owner, to Hall, or through him to the P. & R. Coal & Iron Co. On January 13, 1882, Heffner executed and delivered to Chambers a writing authorizing him to sell the land at $200 per acre and agreeing to allow him a commission of 10 per cent on the price. In view of the fact that the efforts of Chambers might bring purchasers directly to the owner, Heffner agreed if a sale was made by him he would allow a commission of 5 per cent; the right to compensation to depend in either case upon a sale for a price exceeding $40,000.

On January 19, 1883, the land remaining unsold, an indorsement was made upon the writing of January 13, 1882, reducing the price to $150 per acre, authorizing a proposition to the P. & R. Coal & Iron Co. to permit one half the purchase money to remain on mortgage, and agreeing to allow the same commissions as before. About two months later, Heffner made a contract for the sale of the land to C. M. Hall for $50,000, payable one half in cash within three months, and one half by bond and mortgage secured upon the premises.

Hall paid $500 upon this contract, and subsequently transferred it to the P. & R. Coal & Iron Company, which complied with its terms and received a deed for the land. Chambers alleged that this sale was really made by him or as the result of his efforts, and that he was entitled to compensation, at least at the rate of five per cent on the price, in accordance with the written agreement. The defendant denied that the sale was the result of the efforts of Chambers, and asserted that the written contract had expired before the sale to Hall was made.

The verdict must be regarded as settling the first of these questions. There was evidence showing that Chambers had brought the attention of Hall and of the P. & R. Coal & Iron Company to these lands, that the title had been examined, and that he had urged a sale. From this evidence the jury have found that although Chambers did not actually negotiate the sale, he drew the attention of the purchaser to the lands and was the cause of his application to the owner. If, as the verdict establishes the fact to be, the sale was the result of the efforts of Chambers, he is entitled to compensation, unless the agreement had expired by its terms or by notice of revocation before the sale to Hall was made.

An examination of the writing and of the indorsement thereon of January 19, 1883, shows no limitation expressed therein. The burden was therefore on the defendant, of showing that the limitation asserted had actually been agreed upon and omitted from the writing by fraud, accident or mistake. The evidence upon this subject consisted of the testimony of Heffner, on one side, who asserted that it was agreed on January 19, 1883, that the authority of Chambers should end on the 1st day of February following. This was, on the other hand, denied by Chambers whose testimony was supported by the paper. This evidence was submitted to the jury with proper instructions and they have found in favor of the plaintiff upon this question.

The real question in this case is raised by the defendant's point numbered 4½ which relates to the alleged revocation of Chambers' authority to sell. This point asked the court to instruct the jury that if Heffner on January 19, 1883, notified Chambers that he had an offer for the sale of his land, but that he

would not consider it until the 1st of February, this was a no-
tice that Chambers' authority would expire and that he would
resume his rights as owner on that day; so that if Chambers
had not then made sale, his right to a commission on a sale
made by Heffner would be at an end.

The answer to this point is not responsive and we quite
agree with the learned counsel for the plaintiff in error that it
is wholly inadequate. It refers to the writing, recalls the fact
that no limitation appears in its terms, refers to instructions
already given as to the omission of anything therefrom and
concludes thus: "We believe that the defendant had the right
to make sale of his land under the writings before you, but if
he sold to a party who was procured or furnished through the
efforts and exertions of Chambers, . . . . . then Chambers is
entitled to a commission either of five or of ten per cent as we
have heretofore instructed you." The point asked an instruc-
tion upon the legal effect of the fact assumed, viz.: that Heff-
ner had notified Chambers that before considering offers he
had received, he would wait on Chambers till the 1st of Feb-
ruary. The answer related to an entirely different question,
that of the reformation of the written instrument.

If the evidence was of such a character as to justify the
submission to the jury of the fact assumed in this point, the
answer would be an error that we could not overlook. But,
upon turning to the testimony, we find no offer to prove
notice of revocation, and no evidence on which this question
could be raised except that given by the defendant Heffner,
under the following offer: "Defendant now proposes to prove
by Samuel Heffner . . . . . that on January 19, 1883, Cham-
bers came to him and wanted him to change the terms of the
contract and allow him to sell the land for $150 per acre,
etc. . . . . . This to show that by an oversight or mistake of
Chambers, who was the party that wrote this supplemental
contract, or by a fraudulent omission of his, he left out of this
supplementary contract a very material stipulation, that it was
agreed between them in consideration of the concession and
alteration of the original contract, that Chambers' right to sell
the land should terminate on the first day of February follow-
ing," etc.

Nothing could be clearer than the statement of the purpose

of this offer. It was to show that part of an entire agreement had been omitted by fraud, accident or mistake. The court admitted the evidence for the purpose stated in the offer, saying: "We will therefore permit the defendant to testify to the alleged omission as to the time of February 1st, if such is the case." The testimony of the defendant upon the subject was given in these words: "After we agreed on this amount he wanted me then to give him a chance to sell at $40,000. I refused that and told him I had a party to come which I knew would take it at $50,000; then we agreed I would give him this but no longer time than 1st of February, and he made it on the paper." There is in all this no allegation of notice of revocation of the power to sell, nor that Heffner would wait on Chambers till February 1st, before considering offers that had been made to himself. The testimony is strictly in support of the offer to show the omission from the writing, by fraud, accident or mistake, of part of the agreement actually made on January 19, 1883. There is therefore nothing in the evidence to justify the submission of the fact assumed in the point to the jury; and the answer, although not responsive to the point, correctly states the rule as to the question actually raised by the evidence. The plaintiff in error was not injured by the answer actually given, and he was not entitled under the evidence to the instruction he asked for.

It is the duty of a judge to instruct the jury upon every question of law involved in a case trying; but it is not his duty to answer points that raise questions in thesi merely, or that rest upon the assumption of a fact of which there is no such evidence as to justify the jury in finding it.

Judgment affirmed.