Shapira, Appellant, *v.* Union Trust Co., Executor.

Argued October 1, 1931. Before FRAZER, C. J., WALL-ING, SIMPSON, KEPHART, SCHAFFER, MAXEY and DREW, JJ.

*John J. Kennedy,* with him *Rose & Eichenauer,* for appellant.—The option agreement was made between Leader Publishing Co. acting through Mr. Moore as president, and Mr. Frazer, without any prior action on the part of the stockholders or directors: Kelly-Murray, Inc., v. Bank & Trust Co., 299 Pa. 236.

The case appears to us, therefore, as purely and simply one of principal and broker, and in our opinion the numerous decisions in Pennsylvania dealing with this type of case and the facts that the jury could find from the testimony apply here; and further that, under all the evidence and the inferences to be drawn from that evidence, the case was one to be submitted to the jury and its conclusion is final and binding: Detchon v. McSorley, 301 Pa. 493; Statler v. R. R., 296 Pa. 222; Lamb v. Elder, 56 Pa. Superior Ct. 522; McDonald v. Smith, 86 Pa. Superior Ct. 496; Warne v. Johnston, 48 Pa. Superior Ct. 98; Schreibstein v. Cohan, 89 Pa. Superior Ct. 252; Smith v. Strain, 54 Pitts. L. J. 695; Seabury v. Ins., T. & S. Dep. Co., 205 Pa. 234; Heffner v. Chambers, 121 Pa. 84; Prenzel v. Hosiery Co., 299 Pa. 17.

*John S. Weller,* of *Weller, Wicks & Wallace,* for appellee.—Plaintiff's case is based on an alleged special

contract with defendant and he has failed to show performance thereunder: Senderling v. Boldwin, 92 Pa. Superior Ct. 398; Bennett v. Crew Levick, 288 Pa. 180; Keys v. Johnson, 68 Pa. 42; Barber v. Miller, 41 Pa. Superior Ct. 442; Patterson Co. v. Gas Imp. Co., 239 Pa. 277; Elin v. Mark, 288 Pa. 186.

Plaintiff was not the efficient procuring cause of the sale: Earp v. Cummins, 54 Pa. 394; Kifer v. Yoder, 198 Pa. 308; Bossart v. Erie Coal Mining Co., 276 Pa. 63; Groskin v. Moore, 249 Pa. 242; Cathers v. Patchel, 82 Pa. Superior Ct. 257; Egelberg v. Browar, 296 Pa. 382; Zellner v. Murdoch, 298 Pa. 208.

OPINION BY MR. JUSTICE KEPHART, November 23, 1931:

Appellant's contract may be stated from the record to be: After appellant had told Mr. Moore that he could get him a buyer for his newspaper, appellant said, "If I get you a buyer, will you pay me the five per cent commission for getting the buyer. I understand, of course, that you are the owner of the Leader and that you will personally pay me the commission in the event I get you a buyer?" to which Mr. Moore replied by promising "to pay the commission of five per cent in the event that Mr. Shapira got him a buyer." Mr. Shapira asked Moore what he wanted for the Leader. He replied, "It ought to bring something like a million of dollars in cash and the assumption of a moderate amount of outstanding obligations," which were not named, but he (Moore) said, "You get me the buyer, and we will have an inventory made up of the property, including the good will and the real estate, everything appertaining to the Leader, and we will give that to the person who is going to buy the paper."

Appellee takes the position that this was a special brokerage contract and that appellant was required to show not only that he procured a buyer but that he in fact negotiated and completed the sale, and that therefore, since the sale was completed by an agent of the

purchaser who fixed price and terms, appellant cannot recover. Numerous authorities are cited to support his proposition.

There is no special halo surrounding real estate contracts. The law does not imply a contract that does not exist, nor import terms into a contract that have been omitted therefrom simply because the parties are brokers engaged in the real estate business and persons desiring to buy or sell land. All that we ever attempted to do was to carry out the terms of a contract of employment. Ordinarily, when a person places his real estate in the hands of a person to sell on a specified commission, such person, to secure pay for his services, must produce a purchaser who actually contracts for the purchase of the property. These are the normal provisions of a real estate brokerage contract: Keys v. Johnson, 68 Pa. 42; Heffner v. Chambers, 121 Pa. 84; Seabury v. Fidelity Ins. Trust & Safe Deposit Co., 205 Pa. 234; Rick v. Moyer, 296 Pa. 176; Detcher v. McSorley, 301 Pa. 493. This is so even though the owner deals directly with the purchaser: Warne v. Johnston, 48 Pa. Superior Ct. 98; Lamb v. Elder, 56 Pa. Superior Ct. 522; Keys v. Johnston, supra; Gibson's Est., 161 Pa. 177, and the same rule applies when the agent is to buy rather than to sell: Prenzel v. Apex Hosiery Co., 299 Pa. 17. Keys v. Johnson, supra, is perhaps the leading case on the subject.

Where there are special incidents in any contract apart from securing a satisfactory person who is willing to contract at an agreeable price, such incidents have been termed "special features" and the contracts "special contracts." In all of these we have held that it is necessary to carry out the terms of the contract, and the cases cited stand for no more than that an agent must comply with the terms of his contract before he can recover: J. A. Paterson Co. v. United Gas Improvement Co., 239 Pa. 277; Groskin v. Moore, 249 Pa. 243; Elin

v. Mark, 288 Pa. 186; Barber v. Miller, 41 Pa. Superior Ct. 442; Cathers v. Patchell, 82 Pa. Superior Ct. 257.

Whether the agent here is entitled to his commission depends on whether he has performed the duties of his employment, as embodied in the terms of the contract. We will not go into the evidence in detail. We find there was sufficient to go to the jury on the question of performance. The only questions we discuss are the legal ones. Mr. Moore agreed to pay appellant a commission of five per cent for getting him a satisfactory buyer who was willing to pay something like a million dollars in cash and assume a moderate amount of outstanding obligations: "You get me the buyer, and we will have an inventory made up of the property, including the good will and the real estate, everything appertaining to the Leader, and we will give that to the person who is going to buy the paper." While there was no definite price fixed, it was immaterial as long as a means was offered by which a price could be fixed. Moore was responsible for the fact that the price was not explicit. Plaintiff, having produced a purchaser who was willing to pay a "satisfactory price," something like a million dollars, with the assumption of moderate amount of indebtedness, and who did pay $900,000 and assumed $400,000 of indebtedness, was well within the contract of employment. The appellee is in no position to take advantage of the failure to fix an exact sum since Moore was the promisor, and where "a promisor is himself the cause of the failure of the performance of an obligation due him, he cannot take advantage of the failure." Thus, where one promises to buy goods if they are satisfactory, he cannot set up the other party's failure to satisfy him if he refuses to examine the goods: Williston on Contracts, section 677.

One of the tests as to whether an agent is entitled to commissions, where he does not have an exclusive contract, is whether he was the efficient or procuring cause of the sale: Keys v. Johnson, supra. Where a sale has

been effected not as a result of an agent's efforts, but of those of another, the agent cannot recover the commission: Earp v. Cummins, 54 Pa. 394; Bossart v. Erie Coal Mining Co., 276 Pa. 63; Zellner v. Murdoch, 298 Pa. 208; and where there is a conflict of evidence as to the procuring cause of sale, the case is for the jury: Bossart v. Erie Coal Mining Co., supra; McDonald v. Smith, 86 Pa. Superior Ct. 496.

The evidence sustained the jury's finding that the appellant was the cause of the sale. Under appellant's testimony, from the time appellant's representative saw Braun until the deal was completed, there was no break in the chain of causation. Appellee argues that McCune and a member of the bar employed by Braun and the other purchasers were really the responsible parties; that their negotiations were independent of appellant, that in fact they never knew or heard of him until this case was brought. This, no doubt, is correct, but negotiations on the part of Mr. McCune and the attorney arose not through the instrumentality of Moore, the vendor, but through Mr. Braun, the ostensible purchaser, whom Shapira had interested. Braun may not have been satisfied with appellant as an intermediary and secured the parties mentioned, but this would not defeat appellant's right to a commission as against Moore. Moore did not secure the independent agency to complete a deal started by appellant. The only person appearing as agent for Moore was appellant. It is a fair assumption from the evidence that McCune and the attorney for Braun would not have opened negotiations had it not been for appellant's work. An agent is not to be denied his commission from the seller for the sale of property under a contract to produce a satisfactory buyer at a price to be afterwards fixed by the seller, where it appears the agent was the efficient and procuring cause for the appearance of the buyer who actually buys at a price satisfactory to the seller, though the buyer procures others to negotiate the sale.

That title was made to another person would not deprive appellant of his commission: Heffelfinger v. Haas, 71 Pa. Superior Ct. 425; Curry v. West, 88 Pa. Superior Ct. 261. The title to the property was here taken by a corporation, but this would not alter or affect appellant's right to a commission where it appears that the corporation was merely the creature of the purchaser with whom the agent dealt. Such fact is established by the evidence in this case.

An agent is entitled to commission even though the owner makes the sale in ignorance of the fact that it is the agent who found the buyer, or induced him to buy, providing this is due to no fault of the agent: 9 C. J. 621, section 100; Lamb v. Kates, 85 Pa. Superior Ct. 438; Susdrof v. Schmidt, 55 N. Y. 319; McLaughlin v. Campbell, 78 N. J. 541.

It will be observed that we do not discuss defendant's evidence or appellee's argument of the highly improbable circumstances connected with this transaction. We are only concerned with one question, as to whether there is sufficient evidence to go to the jury and whether the judge on this evidence should have entered judgment n. o. v. Concerning any improbabilities, the manifest weight of the evidence, or any other matter showing that no such contract ever existed, all these are matters for the court below in applying rules for a new trial. That is solely the function of the trial court unless there has been a gross abuse of discretion. We reverse the judgment of the court below and direct that the motion for a new trial be reinstated, which is accordingly done.

Judgment reversed; motion for a new trial reinstated; costs to be paid by the appellee.