## Lipper *v.* Tubis, Appellant.

Argued November 19, 1965. Before BELL, C. J., MUSMANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*David Berger,* with him *Herbert B. Newberg, H. Laddie Montague, Jr.,* and *Cohen, Shapiro, Berger & Cohen,* for appellants.

*I. Raymond Kremer,* for appellee.

OPINION BY MR. JUSTICE MUSMANNO, May 24, 1966:

Harry J. Goldberg owned a property at 900 N. Broad Street, Philadelphia, which he desired to sell. Harry Tubis and wife and Herman B. Dubin and wife, trading as the Tubin Furniture Company, desired to purchase this property. They instructed their broker, William J. Diller, to communicate with Goldberg who asked for from $300,000 to $350,000 for the property. Tubis and Dubin declined to buy. Goldberg then placed the property for sale with a well-known real estate company which did not succeed in selling the property. He then displayed a For Sale sign on the property.

Michael H. Lipper, the plaintiff in this case, a licensed real estate broker, happened by chance to see Mrs. Peck, secretary to Mr. Goldberg, on the street one day and offered to take her in his automobile to her destination. During the ride, Mrs. Peck said that if Lipper could obtain "a fast buyer" who would be willing, "without dilly-dallying" to pay $200,000 "or maybe a little less" for the Goldberg property, Goldberg "would come down in price."

Lipper conveyed this information to Tubis and Dubin who said they would pay $150,000, but no more.

Lipper relayed this information to Mrs. Peck who disdainfully rejected the proposition, sardonically adding that Goldberg didn't need an agent to sell "at that price." Lipper met Tubis on the street and related what Mrs. Peck had said and Tubis said he would let Lipper know "in the next couple of days." Shortly after this, Lipper went to Europe.

While he was away, William J. Diller, agent for Goldberg, brought Goldberg together with Tubis and Dubin. Sitting at the table of discussion, flavoring their conversation with the usual give-and-take condiment, which must spice every successful negotiation, the parties arrived at an agreement. Goldberg lowered his asking price, Tubis and Dubin raised their buying price, Diller sliced off a part of his commission, and title to the property changed from Goldberg to Tubis and Dubin for $187,500.

When Lipper returned from his journey abroad, he found that the commercial world had continued to revolve on its axis despite his absence, and that the property which had engaged his rapid and brief representations, was now no longer for sale or purchase. A succulent commission in America had slipped out of his hands while he was viewing the interesting sights across the seas. He brought suit against Tubis and Dubin, demanding 5% of the selling price as his commission on the transaction which was effectuated while he was some 5,000 miles distant. The jury rendered a verdict in his favor for $12,375, plus interest. Tubis and Dubin appealed.

It is the duty of an agent seeking commission on a completed real estate transaction to "establish his employment as a broker, either by previous authority, or by the acceptance of his agency and the adoption of his acts, and . . . that his agency was the procuring cause of the sale." (*Axilbund v. McAllister*, 407 Pa. 46.)

Reading the evidence in the light most favorable to the plaintiff, we conclude it does not rise to a degree of certitude justifying the recorded verdict. The locus in quo of a business deal is not important. A contract may be agreed upon in a beautiful oak-panelled office, in a cave, submarine, or on the street. Thus, the fact that Lipper's dealings with the defendants were confined to fugacious conversations as he drove an automobile or hurried along the street, as a pedestrian, does not deprive him of standing as a full-fledged agent. However, combined with the rest of the circumstances in the case, these chance encounters would seem to indicate that Lipper's agency was of such an unsubstantial character that it cannot support a legitimate demand for commission in the face of the positive evidence that the sale was effectuated through the instrumentality and actions of the agent Diller who brought the opposite parties together, participated integrally in the negotiations, and carried the full burden of the eventually-agreed-upon contract to consummation and fulfillment.

Whatever line of communication Lipper had strung between Goldberg and the defendants was neatly severed by the prow of Lipper's ship or airplane on which he departed for distant lands, leaving the parties as commercially separated from each other as the opposite shores of the Atlantic.

A broker who is not armed with an exclusive sales contract for a particular piece of property must establish with credible and adequate evidence that one of the parties engaged him to effect a sale or purchase, that he did in fact become the immediate, efficient and procuring cause of the sale, and that his principal purchased the property. The third factor is to be resolved here in favor of the plaintiff, but he failed to establish by substance or verisimilitude the truth of the first two propositions. In *Rader v. Palletz*, 160 Pa. Superior

Ct. 335, 339, the Superior Court said: "It was incumbent upon plaintiff to establish the oral contract upon which he based his claim by prima facie proof. The burden is upon one suing for damages for a breach of contract to establish a clear case of something agreed to . . . The existence of the contract must be established by evidence which is substantial; a mere scintilla is not enough . . . A verdict cannot rest upon guess or conjecture."

A reading of the record fails to convince either that the plaintiff was employed to act in behalf of the defendants or that his agency was the procuring cause of the sale. It is quite apparent that he was a mere volunteer, whose actions were not prompted by any requests on the part of the defendants who had already been in prior negotiations with the owner of the property, nor were his representations ratified by the defendants.

The circumstances advanced by the plaintiff fail to rise to the dignity of contract formulation nor do they show that they were the mortar and cement bringing and holding together the structure of the eventual real estate transaction.

Judgment reversed.

Mr. Justice JONES concurs in the result.

---

DISSENTING OPINION BY MR. JUSTICE O'BRIEN:

I cannot agree with the conclusion reached by the majority in this case. Appellee won a jury verdict in the court below and in considering a motion for judgment n.o.v., the evidence, together with all reasonable inferences therefrom, must be considered in the light most favorable to the verdict winner. *Connolly v. Phila. Trans. Co.*, 420 Pa. 280, 216 A. 2d 60 (1966); *Lewis v. U. S. Rubber Co.*, 414 Pa. 626, 202 A. 2d 20 (1964). Viewing the evidence in the light of that

standard, I find ample support for appellee's version of the occurrences which led to the instant litigation.

Appellee's version establishes that shortly before the beginning of the negotiations in question, the seller of the building lowered the price to a figure somewhere in the area of $200,000; that appellee, Michael H. Lipper, was informed of this by Mrs. Marnee Peck, the seller's confidential secretary, who stated that the seller would take the reduced price, or perhaps a little less, from a "fast buyer". Knowing that appellants needed a building of this type for their furniture business, he advised them of the fact that the price had been substantially reduced, and requested authority to continue negotiations, but that the commission would have to be paid by them rather than by the seller. Appellant, Harry Tubis, then authorized him to offer $150,000 at first, and that they would then increase the amount later, in accordance with the information that the purchase of the property could be consummated for a little less than $200,000.

Appellee's testimony on this point was that the initial offer was refused by Mrs. Peck, who stated he would have to go higher, around $200,000, and that thereafter, he made continued efforts to advise appellants of this, but that these efforts were in vain. He later learned, upon returning from Europe, that appellants, dealing through another broker, had effected the purchase of the building.

We stated, in Bossart v. Erie Coal Mining Co., 276 Pa. 63, 119 A. 731 (1923), that, as in the instant case: "The legal principles controlling the present situation have been clearly established by many authorities. The mere fact that negotiations are begun by a broker with the purchaser, who ultimately buys directly from the owner, does not entitle him to commissions, unless his acts are the efficient cause of the sale: Earp v. Cummins, 54 Pa. 394; Kifer v. Yoder, 198 Pa. 308. And,

though a party be induced to take an interest in a property offered, yet if the sale resulted at a later date through the efforts of another, the claimant cannot recover (Groskin v. Moore, 249 Pa. 242; Mitchell v. Baldwin Locomotive Works, 265 Pa. 148; Kelly v. Marshall, 172 Pa. 396), but where, as here, there is a conflict in the testimony as to whether the transaction was completed without a break in the negotiations, the question is one for the jury: Sowney v. Bair, 269 Pa. 448; Croll v. McCullough, 242 Pa. 431; Fenn v. Dickey, 178 Pa. 258."

I believe, as did the court below in its opinion, that: "Perhaps most crucial on the overall question of credibility is the testimony of Mrs. Peck, who was then the executive secretary of the owner, Goldberg, and carried out for him most of the contacts in the negotiations. After the negotiations with her by plaintiff on behalf of defendants had begun and, to her view, were still progressing, she received for the first time a call from the other broker, William J. Diller. Her vital testimony on this interchange appears in the record, as follows: 'Q. Now, about how much later did you hear anything from anybody about the building? A. Yes, I did. About three weeks later. Mr. Diller came in, and he said that he had Dubin Furniture Company, and I said to him, "That's Lipper's client. What am I going to tell Lipper when I see him?" I didn't want to get involved with any lawsuits. He said "Just tell him you don't know anything." So that any time I saw Mr. Lipper, I tried to evade him instead of lying.' Defendants' testimony is that they neither authorized Lipper's intervention nor contracted to pay him a commission; that Diller was their agent, and that he did what any broker would do when he negotiated the purchase for his client of a property long known to be on the market.

"It is obvious that the jury could have, on permissible inferences from the testimony, decided that Diller and the defendants, with knowledge that Lipper had opened negotiations in what he thought was, and what proved to be, an acceptable price range, had by fast action contrived to conclude the purchase agreement, thereby providing a commission to Diller to the exclusion of Lipper. Significantly, the Diller activities and all of his negotiations, including the signing of the agreement of sale, took place in the brief space of a few hours on one day."

Whether the agent here is entitled to his commission must, of course, depend upon whether he has performed the duties of his employment as embodied in the terms of the oral contract. I believe that, viewing the evidence in the light most favorable to appellee, the evidence was sufficient to go to the jury on the questions of (1) whether appellee had a contract and (2) whether appellee performed in accordance with his contract. The evidence sustained the jury's finding that appellee was the cause of the sale. It appears from the testimony that negotiations between appellants and seller arose not through the efforts of Mr. Diller, the appellants alleged lifetime broker, but through the efforts of appellee. It seems fair to assume that if it were not for the apparent efforts of appellee the negotiations would not have been opened between the seller and appellants. As we said in *Shapira v. Union Trust Co.*, 306 Pa. 35, 41, 158 A. 564 (1931) : "An agent is not to be denied his commission from the seller for the sale of property under a contract to produce a satisfactory buyer at a price to be afterwards fixed by the seller, where it appears the agent was the efficient and procuring cause for the appearance of the buyer who actually buys at a price satisfactory to the seller, though the buyer procures others to negotiate the sale." As we stated in *Axilbund v. McAllister*, 407 Pa. 46, 180 A. 2d

244 (1962) : "... in the absence of an exclusive agency, if the actions of a broker constitute the efficient cause of the production of a buyer (or seller), he is generally entitled to his commission even though the sale was finally concluded and completed by the seller (or buyer) himself,[10] or another broker;[11] ..." (footnotes citing cases omitted). I am satisfied that the jury's verdict, supported by the court en banc, disposes of the questions of whether appellee was the efficient sole and procuring cause of the sale, and whether he did in fact have a contract with appellants which he performed, therefore entitling him to the commission, and I therefore dissent and would affirm the judgment of the court below.

Mr. Justice EAGEN and Mr. Justice ROBERTS join in this dissenting opinion.