## McMahon v. Pierce

*John M. O'Connell*, for plaintiff.

*Joseph B. Mitinger*, for defendant.

SCULCO, J., April 5, 1972.—Plaintiff, a real estate broker, claiming the sum of $5,950 with interest, filed a complaint in assumpsit, naming Charles E. Pierce and Ellen K. Pierce, his wife, as defendants. The plaintiff's claim is based on his allegation that he furnished buyers for the property of defendants who are ready, willing and able to purchase the property. After a number of pleadings had been filed, including an amendment to the complaint, the matter came before this court for a nonjury trial on the 19th day of January, 1972.

Plaintiff based his case upon a "Listing Contract" dated January 24, 1968, made between plaintiff's real estate agency and defendants as the owners of the property to be sold. The "Listing Contract," which was introduced into evidence as an exhibit and which is also attached as an exhibit to plaintiff's amended complaint, was on a printed form provided by plain-

tiff. One of the conditions set forth in the contract reads as follows:

"In the event of a sale, transfer or exchange of the property listed herein, by whomsoever the same may be made or effected including the owners within the period of time during which this Contract is in force and effect, the Owner(s) agree to pay the Realtor a fee based on the following commission schedule as applied to the selling price:

"1. Improved Property, Urban or Suburban, 7% on the first $100,000.00 of selling price, and 4% on the balance over $100,000.00 of selling price, and 4% on the balance over $100,000.00. Minimum Fee $800.00."

The testimony would indicate that plaintiff obtained the signatures of Leonard L. Santlmyer and June Santlmyer, his wife, as prospective purchasers of the Pierce property. The Santlmyers signed an agreement form titled "Agreement to Purchase" dated March 22, 1968. This agreement was not signed by defendants. The agreement contained the following language:

". . . This agreement subject to and contingent upon the buyer obtaining a $60,000, 20-year mortgage at 6% The local and state transfer tax stamps are to be divided equally between buyer and seller. Seller agrees to maintain proper fire and liability insurance on said property until delivery of deed."

This agreement also set forth:

"Said deposit shall be returned if this offer is not accepted by seller within seven days from the date hereof, . . ."

Added to the bottom of the agreement was the following statement:

"This agreement is acting as a temporary agreement to show good and sincere faith until another agreement will be prepared on another form showing

exactly what is included in detail, such as a Bill of Lading itemizing the total inventory. Said inventory to be taken by the buyer, seller, and a representative of Don McMahon's office."

It would appear that plaintiff is attempting to show that no sale of the Pierce property was made to the Santlmyers because defendants refused to sell their property. The position of defendants, on the other hand, is that plaintiff did not fulfill the terms of the "Listing Contract" and that plaintiff would not be entitled to a commission until such time as a sale, transfer or exchange of the property took place. In addition, defendants allege that the Santlmyers were not purchasers who were ready, willing and able to purchase the property but were merely persons who made a counter-offer to defendants which defendants were unwilling to accept.

The question before the court is whether plaintiff performed services which would entitle him to a commission under the conditions set forth in the "Listing Contract." The Pennsylvania law on the subject of real estate brokers' commission was clearly stated in the case of Sork v. Rand, 422 Pa. 512 (1966). The Supreme Court in that case stated, at page 517:

" '. . . There is a well settled rule that a real estate broker's right to a commission accrues as soon as he presents a purchaser ready, willing and able to purchase the property upon the agreed terms: Keys v. Johnson, 68 Pa. 42; Sweeney v. Oil and Gas Co., 130 Pa. 193, 18 A. 612. It is also equally well established that if there exists an expressed agreement between the parties that the broker shall not be entitled to any commission until a stipulated condition has been fulfilled, the broker has no claim against the vendor for compensation until that condition has been performed: Clark et al. v. Provident Trust Company of

Philadelphia, Trustee et al., 329 Pa. 421, 198 A. 36; Shapira v. Union Trust Co., 306 Pa. 35, 158 A. 564.': Freiwald v. Fidelity Interstate Casualty Co., 185 Pa. Superior Ct. 190, 193, 138 A. 2d 146, 148 (1958)."

The listing contract provisions pertinent to this case are those referring to a sale, transfer or exchange of the property listed in the contract which give rise to the payment of a commission to an agent. Defendants argue that since no sale, transfer or exchange of the property actually occurred, plaintiff would not be entitled to be paid a commission. We do not agree with this argument as a general principle. The court is aware that a broker could provide a buyer who was ready, willing and able to purchase a property and in such a case, if the property owner refused to sell for no justifiable reason, it is this court's opinion that the broker would be entitled to a commission. However, in the present case, plaintiff produced buyers who were willing to purchase the property only on the condition that they, the purchasers, were able to obtain a $60,000, 20-year mortgage, at six percent. This condition was part of the purchase agreement submitted to defendants.

In the opinion of the court, the Santlmyers were merely persons who made a counter-offer to defendants which defendants were unwilling to accept.

In the recent case, Drennan, Jr. v. Casanave, 48 D. & C. 2d 527 (1969) the court entered a nonsuit against plaintiff where plaintiff, a broker, had produced an agreement of sale conditioned upon the purchasers' obtaining a mortgage. In that case, the court stated, at pages 528-530:

"The compulsory nonsuit was granted because plaintiff did not prove that the buyers whom plaintiff produced had a firm commitment from a reliable source which was willing to lend a mortgage on the

basis of $32,000. Plaintiff had the burden of proving that he produced buyers who were ready, willing and able to purchase the property on defendants' terms: Wilson v. Hays, 283 Pa. 271 (1925). Plaintiff failed to introduce testimony of the proposed purchasers as to their ability to procure such financing. Plaintiff was unable to present evidence upon which the jury could make a reasonable decision as to whether plaintiff presented to defendant-sellers a buyer who was ready, willing and able to perform the agreement that they had signed wherein $48,000 would be paid for the subject property. The testimony of plaintiff, who was the only witness, that the buyers enjoy a good credit rating and have considerable assets does not meet the requirement that the buyers must be shown to have been able to obtain the requisite mortgage to pay defendants. In addition, when the clause was inserted in the agreement imposing as a specific condition the obtaining by buyers of a $32,000 mortgage, and there is nothing in the agency agreement that authorized such a condition, it was incumbent upon plaintiff to submit evidence to show that the buyers were able to perform.

"The law is well settled that once a broker produces for his principal a party with whom he is satisfied, and who is ready, willing and able to actually contract for the purchase of the property and is acceptable to the owner, he is entitled to his commission: McDonald v. Kimmell, 70 Pa. Superior Ct. 282 (1918). A person has earned his commission when he has introduced a responsible purchaser to his principal who is ready to buy at the price named (Clendenon v. Pancoast, 75 Pa. 213 (1874)), and when the meeting of the parties interested has resulted in a contract: Holmes v. Neafie, 151 Pa. 392 (1892).

"No evidence at all was offered that defendants were

willing to accept a conditional sales agreement or one that called for anything but a cash payment. Since no such evidence was produced, it must be concluded that plaintiff did not produce a buyer on defendant-sellers' terms.

"In Simon v. H. K. Porter Co., 407 Pa. 359 (1962), the court said, at page 363:

" 'A purchaser of realty is to be considered "ready, willing and able to buy" so as to entitle a broker to a commission if the purchaser has agreed to purchase the property upon the terms specified by the seller and has sufficient funds on hand or is able to command the necessary funds with which to complete the purchase within the time allowed by the seller.'

"In this case the purchaser did not agree to the terms specified by the sellers and it was not shown that the buyer had sufficient funds on hand — which presumably he could not, otherwise he would not have added the mortgage clause, or was able to command the funds necessary to complete the purchase within the time allowed by the seller, which he could not since the agreement provided that only one-third or $16,000 of the price for which the property was offered for sale, $48,000, would be paid by settlement.

"We thus conclude that plaintiff has failed to meet his burden of proof and that even granting plaintiff benefit of all possible inferences favorable to him, the jury could not be permitted to conjecture as to the ability of the buyers to procure the requisite mortgage. The motion to remove the nonsuit was properly denied."

All of the elements precluding recovery in the Drennan, Jr., case are present in the instant case. There was no evidence that plaintiff produced a buyer on defendants' terms as set forth in the listing contract. It is clear that plaintiff never effected the sale of the

property that was placed in his hands nor did he procure a purchaser who was ready, willing and able to contract for the property under the terms of the listing contract. The prospective purchasers brought in by plaintiff, at the most, made a counter-offer which defendants refused to accept. We must hold that plaintiff failed to do what he undertook to do which would entitle him to the payment of the commissions as set forth in the listing contract.

At the trial, Theodore Kretchek was permitted to testify subject to deferred ruling of the court. The motion to strike his testimony is well taken, and, therefore, the testimony of Theodore Kretchek is hereby stricken from the record.

Therefore, the court finds the following

## VERDICT

And now, April 5, 1972, after trial before this court without a jury and after reviewing the testimony and considering the arguments of counsel, the court finds a verdict in favor of defendants.