James V. Fenn v. William Dickey, William McCain,
F. X. Kreitler, and T. D. Collins, who survive E. H.
Darrah, Appellants.

*Contract—Broker—Commissions for sale of land—Evidence—Question
for jury.*

In an action to recover commissions for securing a purchaser for land,
the evidence for the plaintiff, although contradicted, tended to show that
he made a contract with two of the owners to receive commissions if he
sold the land at a certain price; that this contract was communicated to the
other owners, and assented to by them; that he subsequently procured a
purchaser who was able, ready and willing to pay the price which the
owners asked for the land; and who entered into a contract with the owners
to pay the price, but that the sale fell through and the contract was re-
scinded because a good title could not be made.  *Held*, that the plaintiff
had made out a prima facie case which could not have been kept from the
jury, no matter how strong the opposing evidence.

*Contract—Commissions for sale of land—Ratification—Question for jury.*

In an action to recover commissions for selling land it appeared that the
plaintiff entered into a contract with the owners of the land by which he
was to receive certain commissions for the sale of the land.  After this
contract was made K. acquired an interest in the land.  Subsequently K.
with the other owners entered into a written contract to sell the land to a
purchaser whom the plaintiff had procured.  Just before the settlement
with the purchaser was to be made, K., according to plaintiff's testimony,
said to plaintiff that they were all obliged to him for selling the land.  One
of the other owners said to plaintiff, "I presume you want your money,"
and K. said, "We will be ready for you shortly."  *Held*, that the evidence
of K.'s ratification of plaintiff's contract was sufficient to take the case to
the jury as to K. with the others.

Argued Oct. 6, 1896.  Appeal, No. 67, Oct. T., 1896, by
defendants, from judgment of C. P. Jefferson County, Sept.
Term, 1892, No. 251, on verdict for plaintiff.  Before STER-
RETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN
and FELL, JJ.  Affirmed.

Assumpsit upon a contract to recover commissions for the sale of land.   Before McClure, P. J., of the 17th judicial district, specially presiding.

The facts appear by the charge of' the court below, and the opinion of the Supreme Court.

At the trial Mr. A. B. McLain was called on behalf of the plaintiff and duly sworn.

Direct examination by Mr. McCarrell.

"Q. State whether or not you met those three persons, Messrs. Dickey, Darrah and Fenn, together, at any time in 1886?   A. I did.   Q. About what time in 1886, was that, 'Squire?   A. To the best of my recollection it was along about the 18th or 19th of June.   Q. Did you have a conversation with either Mr. Dickey or Mr. Darrah at a later time in regard to their arrangement with Mr. Fenn?   A. I did with Mr. Darrah.   Q. When was that? A. That was but a very short time after—(Interrupted.)   Q. By Mr. Jenks: Mr. McLain, when was this alleged conversation with E. H. Darrah, to which you are about to testify?   A. It was a short time, I can't tell you, probably ten days after this meeting at Mr. Darrah's house on that morning.   Q. By Mr. Jenks: It was about ten days after that alleged meeting?   A. I think so; probably it might have been more and it might have been less, I did not pay very much attention to it.   (Telegram having been shown witness.)   Q. By Mr. McCarrell: 'Squire, will you look at that telegram and tell the court and jury in whose handwriting it is?   A. Yes, sir; I sent that dispatch, that is my handwriting.   Q. To whom did you send it, to what place, and at what date?   A. I sent it from Brookville to James V. Fenn at Lock Haven at the date that purports there, June 28, 1886.   Q. What conversation did you have with Mr. Darrah about that time?"

Defendants object to the declarations of Mr. Darrah made in the absence of the other defendants as not evidence, for the reasons, first, Mr. Darrah is not shown to be the agent of the other parties; second, he is not sued; third, he is dead; fourth, there is no claim of a contract in the pleadings to which he is made a party; and fifth, this was at a time as to which there is no evidence that Mr. Darrah was authorized to speak for the others.

By the Court: In addition to other evidence in the case it seems that on the Monday following, Mr. Darrah, Mr. McCain, and the plaintiff met at Pittsburg, and that Mr. McCain said to plaintiff, "All right, go on and fetch your party and we will do as we contracted to do," showing that he had a knowledge of the action of Darrah in making the proposed sale of the property ; we think in this view of the case the evidence is admissible. The objections are overruled, exception taken by defendants, and bill sealed by the court.

"Q. What conversation did you have with Mr. Darrah about that time? A. Now, I am not able to say that this conversation was at the date of that telegram. Q. Well, about that time ? A. I said it was a short time after I had met Mr. Dickey, Mr. Darrah and Mr. Fenn at his house, probably something like ten days, I am not clear about that. When I met Mr. Darrah, I rather twitted him, as he and I were very good friends, about this sale; I said, 'This man Fenn is going to make about $50,000 off of you,' and he said, 'Well, that is all right; we are getting a good price for the land.' I said, 'Mr. Dickey, suppose that Mr. Fenn is not able to sell this land'—Q. By Mr. Jenks: Did you say Mr. Dickey? A. Mr. Darrah, I should say. 'Mr. Darrah, suppose Mr. Fenn is not able to sell this land for more than the $400,000, where is he going to come in then?' 'Oh,' he says, 'we will give him a five per cent commission; we can well afford to do that and then make a nice little sum of money.'" [10]

The court charged in part as follows :

It is contended on the part of the plaintiff that Collins was the owner of timber land and had conveyed about the 1st of June, 1886, an undivided interest in this land to the other defendants, Dickey, McCain and Darrah; that he came to this town of Brookville on June 18, 1886, and met Mr. Dickey at his house on the evening of that day, and I believe he also claims he had met Mr. Darrah on that day, and they arranged for a meeting on the morning of the 19th, and that they met at that time at the house of Mr. Darrah. The contract as he tells it is somewhat in these words : That he told them he had come to Brookville to arrange to sell the Forest county lands they had recently bought for $300,000 ; that he thought he had a

purchaser for it at an advance to them and sufficient for a consideration to him in addition for his services; that Mr. Darrah and Mr. Dickey each said they would sell at an advance, Darrah at an advance of from $25,000 to $50,000, and Dickey at an advance making a total of $400,000; he said that would make it a little hard, and Dickey said they would want to sell the whole tract at $400,000 and that I (the plaintiff) was to have all over that amount; that he then remarked to them suppose he could not get over $400,000, and Dicky stated they would give him 5 per cent; they then instructed him how to get to the lands and told him as to the timber on them, seventy-five to ninety million feet of white pine, forty million of hemlock, and eight to ten million feet of oak, and some one of them procured a map from Mr. Kreitler; and further instructed him as to how to get to the lands.

He said they further agreed to name the price and sell to any person that he might bring as a purchaser so that it should not be less than $400,000, and that they agreed that the title to the property would be a perfect title; that he was to have plenty of time to examine the timber; and that they represented to him they were the representatives of, or at least had power to contract for, the others, or rather they represented all the parties; that when they were about leaving the house they met A. B. McLain and one of them stated, "We have given Mr. Fenn the Forest county lands to sell and all over $400,000 he is to get, and if that sum, five per cent."

The testimony of Mr. McLain, who was called as a witness on the part of the plaintiff in this suit, is, that he met these parties coming from and in front of Darrah's house about June 18 or 19, in the morning; "I met them just coming out of the front door, at Darrah's gate. Either Dickey or Darrah said, We have given Mr. Fenn the land to sell at a price of $400,000 and he is to have all he can make over and above that sum." Mr. McLain further testified that some ten or twelve days afterward he met Mr. Darrah and twitted him about this contract, this sale, and he said to him, "What will Fenn get if he only sells for $400,000?" and he says "We will give Fenn a five per cent commission if the sale is not over $400,000, and we can well afford to do that."

It seems, the plaintiff contends, then, that he saw Mr. Pardee,

and that Pardee's men went on the lands and examined this timber, and that on the 1st of July he came to Brookville again, I believe, and informed Darrah and Dickey they were ready to look at the timber, and on the 6th of July they met on the lands, and he introduced Mr. Pardee to Mr. Darrah and Mr. Dickey, and on July 7 they went over the lands; that Darrah and Dickey complained to him that Pardee seemed to be dissatisfied with the price namely, of $450,000, and they urged him to help them, to see Pardee and to keep him up to that price.

The connection Mr. Kreitler had with this, so far as the testimony of the plaintiff is concerned, was, that he saw him there on the 2d of September, and that Mr. Darrah introduced Mr. Kreitler to him, and Kreitler said that he was glad to meet him, and Darrah said, "We are all here to make the transfer, and I presume you want your money;" and Kreitler said, "We will be ready for you shortly, in Mr. Tate's office." And he connects Mr. Collins with it, that he was introduced to Mr. Collins by Mr. Darrah (I believe this was there), and Darrah said there was some hitch (that was on the 2d of September) with Pardee, and Collins said, "You are interested as well as we are, and we want you to help us with Pardee!"

It seemed that a contract was entered into on the 13th of August. These parties went to Tionesta and entered into a contract for the purchase of the land for $400,000. This contract, I believe, had something like twenty days in which it should be closed. And on the second of September the parties again met there, Pardee and others, and the defendants, with their wives, ready to close the deal. At that time, Mr. Kress, who represented Pardee, found a defect in the title and instructed his client not to accept the property. And the plaintiff further contends that by reason of this defect in the title the deal fell through, the contract was canceled, and the money that had been paid at the execution of the contract, which was $10,000, was surrendered, and also $1,400 in addition were paid Pardee (Mr. Collins, I believe stated he furnished the money paid Mr. Pardee) for his expenses in examining the title and looking over the property.

Mr. Pardee said that he went there to look at the timber lands, and went, through Fenn, and with him; that is, through the instrumentality of Mr. Fenn, and with him, in July, 1886;

that he first heard of these timber lands through Fenn, and came there a number of times in 1886 ; that he employed Mr. Haines, who was his timber expert, to examine the timber and determine the kind, quantity and quality of it, and subsequently they met Darrah and Dickey on the land. He said that at the time of the meeting in September, 1886, he was ready with the money, had $90,000 in New York and Philadelphia paper, drafts, to meet these obligations, which were, I believe, $90,000 to be paid then; and he was ready and willing to complete the contract, and it was only on account of the failure of the parties to present what his counsel considered a good, valid, marketable title to the property, that he refused to accept. The defect that was found in the title by Mr. Kress was, that some undivided five fifty-sixths interests, or one third of that, were outstanding in the heirs of one Joseph Green, from whom Mr. Collins had derived title, and he deemed this of sufficient importance, and a defect of such a character, that it could not be remedied except by conveyance from those heirs, and so he instructed his client not to accept the property. This, in substance, is the case on the part of the plaintiff.

The defendants have been called to the stand, and their defense is practially a denial of this whole contract as alleged by Fenn and as set up by him. Mr. Dickey said the first that he met him was on the morning of the 19th of June. That he was not at his house at all on the evening of the 18th of June, and he did not know there was such a man as Fenn before the 19th. That on the morning of that day Mr. Darrah called him into his office and there he met Mr. Fenn and was introduced to him. " Fenn said he represented a firm in the east who wanted to buy a large tract of pine land, and he wanted to know if we wanted to sell, and I stated we did not care to sell. He said he had talked to Darrah and he agreed to sell." He intimated to him that they had bought this property for the purpose of operating it and not for the purpose of selling it, and " I said I did not care to sell it. If all the rest are willing to sell at the sum of $400,000, I would not stand in the way of the sale." That there was nothing stated there about guaranteeing the title, and nothing was stated about their representing the other parties in interest. That he further told Fenn he did not think that Collins would agree to sell, and that he had not seen Mc-

Cain in the matter; that he never saw Fenn again until they met at Pittsburg. It then seems that he and Mr. McCain met there and Fenn was introduced to Mr. McCain, and they talked about selling this land, and Fenn wanted to know if they would give him an option for twenty to thirty days on the land and Mr. Dickey said to him, "Not a day!" to bring on a man, to bring on his purchasers and buy the property; that Mr. Darrah was not there at that time and did not introduce Mr. Fenn as he had testified, but Mr. Dickey himself introduced him to Mr. McCain. He denies that he was on the timber, said he was not there examining it with Fenn, did not meet him on the first of July. He further testified that he not only told Fenn he had no power to represent these parties, but that they did not represent any of them but themselves, that is Darrah and Dickey, and that he had no power to act for the others, and he made no representations to Fenn of such power; further, he said that Mr. Fenn, so far as he knew, had nothing to do with the contract.

Mr. McCain was called and testified to meeting Mr. Fenn at the Hotel Boyer at Pittsburg, Mr. Dickey having introduced him, in the summer of 1886, between the 1st of June and the 13th of August, he could not name the date; he had business transactions in Pittsburg at that time frequently and he could not name the date they met there. He said he did not see Darrah and Darrah had not introduced him. His testimony further is, "Dickey introduced me and said Fenn was the man who wanted to buy and that he would give $400,000 for the property. Fenn asked me if I would sell at $400,000; I said I was not particular about selling but if the rest wanted to I would not stand in the way of the sale," and there was nothing said about Fenn representing him. He further testified as to the option, that Mr. Fenn wanted to know whether he would give him an option on it, and Dickey replied to him that he would not give him an option for a day.

[Mr. Kreitler was also called as a witness. His interest in this property according to the agreement which you will have out with you began on the 22d day of July, 1886, and therefore of course he could not have authorized—unless you would find that he was interested before the agreement, he could not have authorized Mr. Darrah or Mr. Dickey to make sale of his prop-

erty which he did not then own, and the subsequent ratification of this act is the only means you have of bringing him or holding him to this contract.] [4] We will come to that branch of the case in a few minutes. Mr. Kreitler said he thought he saw Fenn at Tionesta on the 2d, when they all met there to consummate the deal, but he had no recollection of seeing him between the time he got the map from him (you will recollect his testimony about the map) and that time; that he never heard of any contract to pay for the sale before summons was served, and that he never authorized any one to make the sale for him.

Mr. Collins also testified he never authorized any one to make the sale, never knew about Fenn until suit was commenced, and never had any knowledge of any one making the sale of the lands until he signed the contract; "never saw Fenn that I know of until now; never asked Fenn to help on the sale, as he was interested as well as I," at the time testified to by Fenn, on the 2d of September, 1886.

Now, gentlemen, as we recollect it, this in main is the testimony of the parties, and we have only gone over it because this case has been drawn out over two or three days, and the effect of much of the testimony must have been lost on your minds, and we have just called your attention to what we think are the main features of it. [The question that you will have to determine is, whether there was such a contract as alleged by Mr. Fenn and sworn to by him for the sale of this property; and if he had a contract for the sale of it with these defendants, representing the others, whether or not he procured a purchaser who was able, ready and willing to accept the price named by them? If there was such a contract, and he furnished a purchaser, able, ready and willing, and this contract fell through and the deal fell through on account of a defect in the title, he is entitled to his commission.] [7]

Of course if there was no such contract, if Fenn had nothing to do with it, if as testified to by these witnesses he did not make the contract, and was, as they supposed, representing the purchaser instead of the sellers of this property, and their version of this is true, then he is not entitled to his commission.

[Now, it is necessary for the plaintiff to establish his authority, his employment. He was practically a broker in this case

and his commission is what is known as brokerage; and he must establish that, as I said, either by previous authority, that is, by Darrah and Dickey telling him to go on with the sale, or by the acceptance of his agency and the adoption of his acts by those who did not previously authorize him. Each one of these defendants must have previously authorized or subsequently accepted his agency and adopted his acts in order to bind them. Now, did these people authorize him to proceed? And if they did not authorize him to proceed themselves, did they accept his agency and adopt his acts, as according to the evidence in the case it was the plaintiff's duty to prove as to Mr. Kreitler?] [5] We will say that it is necessary, in order to recover a verdict against these parties (and a point has been submitted to that effect)—it is necessary for you to find a verdict against all of them or none. And if any one of these parties did not authorize the act, or did not accept his agency and adopt his act, then your verdict should be in favor of the defendants, because the plaintiff must get a verdict against all or none.

[We will repeat, so you will be sure to understand, that it was the plaintiff's duty to procure a purchaser who was able, ready, and willing to purchase the lands at a price agreeable to the owners, and if in pursuance of the contract with Darrah and Dickey (if you find there was a contract) he procured A. Pardee & Son as purchasers, and they were able, that is, they had the financial ability, to complete this contract, to pay the $10,000 down on the day of the sale and $90,000 at the time of the execution of the deed, and to give the other additional security—if they were able to do that and were ready, came there prepared for that purpose, with the money in their pockets as testified to by Mr. Pardee, and willing to purchase, that is they were willing to go on bona fide, in good faith, to complete this contract, and did not raise the objections to the title as a mere subterfuge to get away from it, and were willing to purchase at $400,000, and the deal fell through on account of a defect in the title, the plaintiff had earned his commission; and if each of the defendants had either authorized the plaintiff to procure a purchaser, or had accepted his agency and adopted his acts, the verdict should be in the plaintiff's favor.] [6] On the other hand, as said before, if they did not adopt his acts, or did

not authorize him to proceed, then the verdict should be in favor of the defendants.

Plaintiff's points and answers among others were as follows :

1. That if the jury believe from the evidence that the plaintiff, James V. Fenn, was employed by the defendants to procure a purchaser for the timber upon the lands in Forest county owned by them, for the price of not less than $400,000, and that the plaintiff in pursuance of said employment procured the defendants a purchaser for the said timber at the price designated in the persons of A. Pardee & Son, to whom the defendants made a proposition of sale, and that the said Pardee & Son, in good faith, accepted said proposition and entered into an agreement of purchase, dated August 13, 1886, and that the said A. Pardee & Son were able to comply with their part of said agreement, then the sale was made so far as the plaintiff in this case was concerned, and the plaintiff is entitled to recover the full sum of the commission agreed upon between him and the defendants. *Answer :* We affirm this point with this qualification : That you should find not only that Pardee & Son were able to comply with their part of the agreement, but that they were able, ready, and willing, as we instructed you in the general charge, to comply with it. [8]

2. That if the jury believe from the evidence that the defendants made a proposition for the sale of their timber in Forest county at the price designated in their arrangement with the plaintiff, if such arrangement was made, which the said Pardee & Son accepted in good faith and were able to carry out, but that the sale to them failed to be consummated by reason of the defendants' defective title to their timber, then the plaintiff is entitled to recover his full commission as per his agreement, if made, to wit : five per cent on the sum of $400,000 with interest thereon from the time when the said proposition was accepted by Pardee & Son as evidenced by their agreement of August 13, 1886. *Answer :* This point is also affirmed with the qualification that you should find that A. Pardee & Son were not only able to carry out their part of the agreement, but were also ready and willing to carry it out. [9]

Defendants' points and answers are among others as follows :

4. That as under the express terms of the alleged contract, as testified to by the plaintiff, he was only entitled to recover

commission on $400,000 in the event he could not sell for more than that amount, and as the evidence shows he could have sold for more than that amount but did not do so, nor give any notice to Collins, McCain or Kreitler, or bring home to them knowledge of such fact, or show that they stood in the way of its accomplishment, he cannot recover the commission. *Answer:* We refuse to so instruct you. [3]

7. That there is no sufficient evidence that T. D. Collins, W. G. McCain and F. X. Kreitler, or either of them, with knowledge of the same and the terms thereof, ratified the alleged contract of June 19, 1886, at any time subsequent thereto. *Answer:* We refuse to so instruct you. [2]

9. That under the pleadings and evidence in this case the verdict of the jury should be for the defendants. *Answer:* We refuse to so instruct you. [1]

Verdict and judgment for plaintiff for $31,169.99. Defendants appealed.

*Errors assigned* among others were (1–9) above instructions, quoting them; (10) ruling on evidence, quoting the bill of exceptions; (14) refusal to strike off amended statement.

*G. A. Jenks,* with him *Charles Corbet,* for appellants.—It is error to submit to the jury the question of whether the party subsequently ratified the act of a person acting without authority, where there is no evidence that the facts were ever communicated to the party, or that he assented to the acts alleged to be done for him: Moore's Executors v. Patterson, 28 Pa. 505; Union Refining etc. Co. v. Bushnell, 88 Pa. 89; People's Bank v. Gayley, 92 Pa. 518; American Underwriter's Association v. George, 97 Pa. 238; Hays & Wick v. Lynn, 7 W. 525; 1 Wharton on Agency, sec. 65.

The rule is well settled that a full knowledge of all the material facts and circumstances attending the transaction is necessary to give validity to the ratification; and the party must know that he would not be bound without such ratification: Pittsburgh & Steubenville Railroad Co. v. Gazzam, 32 Pa. 340; Porter v. Patterson, 15 Pa. 229; Twelfth Street Market Co. v. Jackson, 102 Pa. 269; B. & O. Relief Ass'n v. Post, 122 Pa. 579; Essick v. Buckwalter, 1 Pa. S. C. Cases (Mona-

ghan) 209; Zoebisch v. Rauch, 133 Pa. 532; Frank, Liveright
& Co. v. Martin, 26 W. N. C. 361; Owings v. Hull, 9 Peters,
607; Bennecke v. Connecticut Mutual Life Ins. Co., 105 U. S.
355; Bloomfield v. Charter Oak National Bank, 121 U. S. 121;
Western National Bank v. Armstrong, 152 U. S. 346; Seymour
v. Wyckoff, 10 N. Y. 213; Smith v. Tracy, 36 N. Y. 79; Bald-
win v. Burrows, 47 N. Y. 199; Smith v. Kidd, 68 N. Y. 130;
First National Bank of Fort Scott v. Drake, 29 Kansas, 311;
s. c., 44 Am. Rep. 646.

The contract declared on is a joint one and the judgment
rendered is joint: 1 Chitty's Pleadings, 51; Schoneman v. Feg-
ley, 7 Pa. 433; Rowan v. Rowan, 19 Pa. 181; Loew v. Stocker,
61 Pa. 347.

The declarations of an agent made after the transaction is
fully completed and ended, are not admissible: Huntingdon
etc. R. R. v. Decker, 82 Pa. 123; Giberson v. Patterson Mills
Co., 174 Pa. 369.

*W. F. Stewart, J. Rider Cady* and *S. J. M. McCarrell,* with
them *John Conrad,* for appellee.—The question of ratification
was for the jury: Bond v. Aitkin, 6 W. & S. 165; Mechem on
Agency, sec. 146; Fichthorn v. Boyer, 5 W. 159; Kramer v.
Dinsmore, 152 Pa. 264; Miller v. Glassworks, 172 Pa. 70;
Ahern v. Goodspeed, 72 N. Y. 115; Codwise v. Hacker, 1
Caines R. 539; Berwick v. Dusenberry, 32 How. Pr. R. 348;
Commercial Bank v. Warren, 15 N. Y. 579; Meehan v. For-
ester, 52 N. Y. 277; Bank of U. S. v. Davis, 4 Hill, 464.

The law is well settled in regard to plaintiff's right to re-
cover: Keys v. Johnson, 68 Pa. 42; Reed's Ex. v. Reed, 82 Pa.
420; Mayer & Co. v. Rhoads, 135 Pa. 602; Sweeney v. Oil &
Gas Co., 130 Pa. 193; Middleton v. Thompson, 163 Pa. 119;
Restein v. McCadden & Bro., 166 Pa. 343.

OPINION BY MR. JUSTICE MITCHELL, November 9, 1896:

Notwithstanding the number and the elaboration of the as-
signments of error, there is little in this case but questions of
fact which the jury have settled.

The stress of the argument was put on the absence of suffi-
cient evidence of a joint contract by all the parties defendant,
and especially by Kreitler, as to whom it was admitted that he

was not in the original agreement, and must have become party, if at all, by ratification.

No just complaint can be made of the charge of the learned judge on this subject, as he several times, in the most explicit and forcible way told the jury that unless they found that all the defendants joined in the contract originally or by ratification, the verdict could not be for the plaintiff. The criticism of the charge in the fifth and sixth assignments, as putting to the jury an alternative of execution or ratification, which included all the parties in both categories, is over refined. The jury were explicitly told more than once that as Kreitler did not purchase a share in the land until July he was not a party to the original contract and could only become so by ratification. The jury could not have failed to understand the judge as directing that each and every one of the defendants must be shown to have joined in the contract either by actual participation in making it, or by precedent authority to those who actually made it, or by ratification, and that as to Kreitler the last was the only way in which the evidence would permit including him. The appellants were certainly not entitled to ask anything more than this.

In this connection the fourth assignment may be considered. In charging as to Kreitler the judge called attention to the date of his purchase and told the jury, as already discussed, that "unless you would find that he was interested before the agreement," ratification was the only means of bringing him into the contract. It is now complained that this was submitting to the jury a fact of which there was no evidence. But this is not the fair and reasonable construction of the language used. Taking it in its connection with what precedes and follows, it clearly means "Kreitler did not buy until July, and therefore he can only be brought in by ratification, unless you should find that he was interested before the agreement, which would be finding that he authorized Dickey or Darrah to sell property which he did not then own." It was a parenthetical remark and, so far from submitting a proposition to the jury to find such previous interest, was intended to show them how absurd such a result would be, and thereby to emphasize the necessity of finding ratification in order to include Kreitler. The jury could not have been misled by it.

Coming now to the evidence we find it exceedingly conflicting, and it would be wearisome and unprofitable to go over it in detail. There is a solid basis of uncontroverted facts, with which we may start. The defendants were the owners of the land, and the plaintiff entered into negotiation with some of them as to the sale of it, he says in their behalf, they say in behalf of the prospective purchaser; the plaintiff found such purchaser in the firm of A. Pardee & Son with whom he made a written contract of option; all of defendants subsequently entered into a written contract of sale to Barton Pardee, and all parties met at Tionesta and rescinded this contract because of inability of the defendants to make a marketable title. · The plaintiff's case thus outlined in undisputed facts, is further made up of his testimony as to the contract for his commissions made first with Darrah and Dickey, and then communicated to the others, and assented to by them; his finding of the purchaser and bringing him to the owners, thus completing his part as agent or broker. Then we have the corroboration in part of the plaintiff by McLain, and in other part by Barton Pardee, who testified that the attention of his firm was called to the property by plaintiff, that the contract made in his own name was on behalf of his firm, and in consequence of plaintiff's original communication, and that he was able, willing and ready to carry out the purchase if the title had been good. This made a prima facie case which could not have been kept from the jury, no matter how strong the opposing evidence. The only point necessary to notice in any further detail was the evidence pointing specifically to the ratification by Kreitler. As already noticed he bought an interest in the land in July, joined in the contract of August 13, to sell to Barton Pardee, and was present on September 2 at Tionesta for the purpose· of joining in the deed. Plaintiff also was there and testifies that he was introduced to Kreitler as the man " who had sold the timber for them " (the defendants), and Kreitler said "they were all obliged to me for selling the timber," and in further conversation, Darrah, in Kreitler's presence, said to plaintiff " I presume you want your money," and Kreitler said, " We will be ready for you shortly," referring to a meeting of the parties to be held on the same day at Mr. Tate's office. This testimony, if believed, justified, if it did not require, an inference that

Kreitler knew that the sale of the timber that he had come to Tionesta for the purpose of concluding by the execution of a deed, was brought about by plaintiff, and that plaintiff was to be compensated for his services by the owners there present, including himself, and his remark that "we will be ready for you shortly" shows acquiescence and ratification of the arrangement of which he was then informed, even in the very improbable contingency of his having previously joined in a contract of sale for the important sum of $400,000, without knowing how such sale was brought about. There were other circumstances tending to corroborate this testimony, but it was of itself sufficient to take the case to the jury as to Kreitler with the others.

The third assignment cannot be sustained. There was no evidence to justify the affirmance of the point that plaintiff could have sold for more than $400,000 and did not do so. Pardee & Son had an option at $450,000 but no binding contract at that price.

It is somewhat difficult to see upon what the seventh, eighth and ninth assignments are based. The portions of the charge there specified were correct statements of the law, and the testimony of Barton Pardee was uncontradicted that the contract of August 13, though made in his own name, was on account of the firm of A. Pardee & Son, the purchasers procured by plaintiff.

The tenth assignment, as to the admission of McLain's testimony, is sufficiently answered by the learned judge below, that McCain's saying to plaintiff, "all right, go on and fetch your party and we will do as we contracted to do," shows knowledge and ratification of what Darrah and Dickey had assumed to do.

As the amended statement introduced no new cause of action there was no error in permitting the amendment.

The other assignments of error do not seem to require special notice.

Judgment affirmed.