## Ira M. Burchfield and George A. Murdoch, partners as Burchfield & Murdoch, Appellants, *v.* William H. Griffith.

*Real estate broker—Commissions—Procuring cause—Question for jury.*

A real estate broker becomes entitled to a commission whenever he procures for his principal a party with whom he is satisfied and who actually contracts for the purchase of the property at a price acceptable to the owner, but he must also prove that his agency was the procuring cause of the sale.

An offer of $8,000 cash and certain shares of stock was submitted by the plaintiff which was refused by the owner, who afterwards accepted through another party from the same purchaser an offer netting him $14,000 cash. *Held* that the case was for the jury, under proper instructions, as to whether plaintiffs' agency was the procuring cause of the sale.

Argued May 8, 1899. Appeal, No. 210, April T., 1899, by plaintiffs, from judgment of C. P. No. 2, Allegheny Co., April T.,

1898, No. 28, on verdict for defendant. Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER and W. D. PORTER, JJ. Affirmed. Opinion by W. W. PORTER, J.

Assumpsit. Before WHITE, P. J.

It appears from the record and evidence that this was an action to recover commissions based on the allegations of plaintiffs that they were employed by defendant to find a purchaser for his house which plaintiffs claim they did procure. Defendant denied the procurement of the purchaser by the plaintiffs.

[At the trial the court refused to allow plaintiffs to prove that there is a difference between the customary commission received by brokers for the sale of property down town in the city of Pittsburg and that received for the sale of property in the east end of the city of Pittsburg,] [1] [and overruled plaintiffs' objection to the introduction of evidence to show that another party took part when the transaction for the sale of the land was finally closed, the purpose being to show that the sale was finally made by Mr. Mesta and not by plaintiffs.] [2]

The court charged the jury in part as follows .

[It seems from the evidence of Mr. Murdoch, one of the plaintiffs, that the first conversations with the defendant were some time in the fall of 1896, talking on the cars several times on the subject; nothing definite ; nothing said about the price;] [3] nothing said about the time when he was to get a purchaser. According to Mr. Murdoch's testimony, about the 22d of February, 1897, he saw Mr. Kaufmann and took him to the house, and got an offer from him to buy the property, paying, at least in part, in stock in some company, but the defendant refused to accept that offer. That is admitted by the plaintiffs. [Now, they had not furnished a purchaser at that time, because they must furnish a purchaser at the price agreed upon, or at such price and terms as the owner will accept. They cannot furnish a purchaser at one half what the owner wants ; or they cannot furnish a purchaser who trades some property, or who pays some cash and part in stock. That is not furnishing a purchaser. That would be, in many cases, a fraud practised upon the owner of property.] [4] When there are no terms agreed upon, it must be at such terms and

price as the owner of the property will accept. The broker may get the owner to say what price; if he does not do that, the owner is not bound to take anything that the broker may find a man to offer to give. [In addition to that, it must be within a reasonable time. Where there is no time limit, the owner is not bound to wait a year for the agent to sell the property.] [5] . . . . He may employ any other agent, or as many as he pleases, to sell the property, if there is no time limit, no time given to the agent in which to sell it. The agent must furnish a purchaser within a reasonable time. Mr. Maurice Kaufmann made an offer about the 22d of February, 1897, which was refused by the defendant. What further was done? According to the letters and some testimony, the defendant said, " Go on and see what you can do." Did the plaintiffs ever after that furnish a purchaser at the price and terms that the defendant would accept? [I do not think there is any evidence on the part of the plaintiffs that, at any subsequent time, they made any offer to the defendant on behalf of Mr. Kaufmann.] [6] The matter hung on; other agents were employed. One of them, according to his testimony, went to see that property before the plaintiffs took Kaufmann there, he says about the 15th of February. But the thing hung on during the summer, the house vacant all the time. [Another broker testifies that, some time during the summer or fall, he got in communication with the defendant and with Mr. Kaufmann, and finally made an arrangement with the defendant by which Kaufmann would buy the property at $14,000, paying $8,000 cash and giving stock for $6,000, but that broker would take the stock at $6,000, so as to give the cash to the defendant for the whole purchase money, $14,000.] [7]

[Now, did the plaintiffs furnish the purchaser? This was a year, or nearly a year, after the plaintiffs took Kaufmann to see the property.] [5] [That was about the 22d of February, 1897; the deed was finally made in January, 1898. It hung on all that time, [and finally the defendant got cash, the whole price was cash substantially, because the broker took the stock and made it cash to the defendant.] [8] Now, did the plaintiffs here furnish that purchaser? [It is true that they showed Mr. Kaufmann the property, and it is true that they told the defendant that Mr. Kaufmann would make an offer of a certain

amount, but that was not accepted.   Did the plaintiffs ever furnish an offer that was accepted by the defendant?   If not, they are not entitled to recover anything at all in this case.] [9]

There is a reasonable time always to be implied where there is no time specified.   [A man may be employed as real estate agent to sell a piece of property, he may get bids on it in one month, and do nothing for six months or nine months, and the owner may sell to somebody else, or sell to the same man, and it is not in pursuance of that contract.   I repeat, gentlemen, to enable the plaintiffs to recover, they must have furnished a purchaser on terms and conditions that the defendant, as the owner of the property, accepted.   If they did not do that, and other arrangements were made by the owner, by which he got cash for the whole, in place of part stock, the plaintiffs did not furnish the purchaser.] [10]   If they did, of course they would be entitled to a reasonable commission.

*Errors assigned* were (1, 2) to rulings on evidence, reciting same.   (3–10) To portions of the judge's charge, reciting same. (11) In refusing or altering plaintiffs' third point in writing, which point and answer are as follows : "If you find that the defendant employed or authorized the plaintiffs to procure a purchaser to whom the defendant or his wife actually did sell the property, the plaintiffs are entitled to a verdict for a reasonable commission.   *Answer :* Affirmed, if plaintiffs furnished a purchaser at the price and terms accepted by defendant."

*William O. McNary*, for appellants.—That a broker is entitled to his commission if he procures a purchaser to whom the property is actually sold by the owner, see Keys v. Johnson, 68 Pa. 42, Reed's Exrs. v. Reed, 82 Pa. 420, Heffner v. Chambers, 121 Pa. 84, and Gibson's Estate, 161 Pa. 177.   This case is very similar to the case at bar.

In Heffner v. Chambers, supra, the question of the revocation of the broker's authority as agent is fully discussed, in which case the Supreme Court also says that " it is the duty of the judge to instruct the jury upon every question of law involved in a case trying."

*C. C. Dickey*, of *Shiras & Dickey*, for appellee.—The evidence

of which the appellants complain in the second assignment of error, was admitted for the purpose of showing that the question to be considered by the jury was whether or not the plaintiffs were the immediate and efficient cause of the sale : Johnson v. Seidel, 150 Pa. 396.

The other assignments of error are practically a complaint that the court below refused to instruct the jury to find for the plaintiffs.  As there was abundant evidence to overturn the plaintiffs' prima facie case, of course the plaintiff was not entitled to such instructions.  The court submitted the case, with instructions that to enable the plaintiffs to recover, they must have furnished a purchaser at such price and upon such terms as the defendant was willing to accept.  This instruction was in strict accordance with the rule prescribed in Keys v. Johnson, and the subsequent cases.

This case is ruled by Hartley v. Anderson, 150 Pa. 391, in which it was held that where a contract provided for payment for services in procuring a purchaser for real estate, such services are not rendered by submitting a proposition from a party with whom the owners had been negotiating.

OPINION BY WILLIAM W. PORTER, J., July 28, 1899:

The defense to the plaintiff's claim for commission is that he did not first bring the purchaser to the seller ; that he never procured an acceptable offer, and that the act of a third party was the efficient cause of the sale.  It will be seen that these are allegations of fact.  Testimony was submitted, which to some degree supports them all.  The trial judge in sending the case to the jury submitted the comprehensive question : Did the plaintiff furnish the purchaser?

Upon all the testimony the date when Kaufmann was first taken to inspect the house was doubtful.  The plaintiff says that he thinks he took him there on February 22, and that a proposition was submitted to the defendant on the 23d.  Another agent testifies that he took Kaufmann to inspect the house previous to February 22, and Kaufmann is not able to say whether the second broker procured from him an offer to the defendant before the offer through the plaintiff, or not.  Under these circumstances it was not possible for the court to do otherwise

than leave it to the jury to say whether the plaintiff had in the first instance brought the seller and purchaser together.

The only offer communicated to the defendant by the plaintiff from Kaufmann was $8,000 in cash and certain shares of stock in a manufacturing company. This offer was declined. Subsequently the defendant accepted from a Mr. Mesta an offer of $14,000 from Kaufmann. In this transaction the shares of stock also figured. The offer was in form practically the same as that submitted through the plaintiff but with a substantial difference when it reached the vendor, namely, that Mr. Mesta would take the shares of stock at a price which netted the defendant $6,000, and which, with the $8,000 cash, made the purchase money $14,000 cash to the vendor. The shares of stock passed through the defendant by transfer. Technically they may have been a part of the purchase money, but the transaction to the vendor was cash. In this aspect it was materially a different sale from that proposed through the plaintiff. By the conversion of the offer of cash and stock into a sale for all cash, the act of Mr. Mesta became the efficient or procuring cause of the sale.

Upon the testimony submitted, the plaintiff has no cause to complain that the case went to the jury on the broad question submitted by the court. True it has been held that "a broker becomes entitled to his commission whenever he procures for his principal a party with whom he is satisfied and who actually contracts for the purchase of the property at a price acceptable to the owner," but he must also prove "that his agency was the procuring cause of the sale:" Hartley v. Anderson, 150 Pa. 391; Keys v. Johnson, 68 Pa. 42; Earp v. Cummins, 54 Pa. 394.

The plaintiff was not injured by the ruling complained of in the first assignment. The subject of the customary commission was before the jury, who have said by their verdict that the plaintiff was entitled to no commission whatever. To have excluded the evidence, the admission of which is the subject of the second assignment, would have cut out a large part of the defense. It was within the defendant's right to show the circumstances under which the property was finally sold. The third to the twelfth assignments are to parts of the charge. Some of these, as detached excerpts, might be made the subject

of criticism, but taken as a whole we are of opinion that the charge was unobjectionable.

The assignments of error are therefore dismissed and the judgment affirmed.