## Peters v. Holmes, Appellant.

*Principal and agent—Real estate broker—Commissions.*

1. When a broker is duly authorized to sell property by private sale and has commenced negotiations with a purchaser the owner cannot while such negotiation is pending take it into his own hands and complete it either at or below the price first limited and then refuse to pay the commission. If the evidence is conflicting as to whether the broker brought the parties together, or if having done so had abandoned the sale to the person introduced, the case is for the jury.

2. Where a broker effects a sale of property for a sum named, he is entitled to his commissions on such sum, irrespective of the fact that there was a mortgage upon the property.

Argued Oct. 13, 1910. Appeal, No. 84, Oct. T., 1910,

by defendant, from judgment of C. P. No. 1, Phila. Co., Sept. T., 1907, No. 2,172, on verdict for plaintiff in case of C. P. Peters, trading as C. P. Peters & Son, v. Margaretta Holmes, executrix of the estate of Sophie M. Holmes, deceased. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD, BEAVER and PORTER, JJ. Affirmed.

Assumpsit for commissions.

KINSEY, J., charged as follows:

If a broker brings the seller and buyer together in a real estate transaction such as this, he is entitled to his commission—I mean, bringing them together whereby a sale is consummated. The question for you to determine is, Did the efforts of the plaintiff here bring about that result with Mrs. Holmes? If they did, he is entitled to his commission; if not, he is not so entitled. [What are the facts? Plaintiff puts up a sign, Mr. Price says he saw the sign, which was the first notice he had that the property was for sale. Then he made inquiry of Mr. Peters, had negotiation and conversation with them as to the price, and so forth, the usual incidents that take place when there is a negotiation of that kind going on. This lasts for awhile until finally Mr. Price visits Mrs. Holmes, the owner of the property, they negotiate, a deed is made to Mr. Price and the broker Peters is discarded.] [2]

In bringing about those relationships the law does not contemplate that this shall go on forever, but it does say that if whatever has been done by a broker is an efficient and near by cause, that results in the purchase, he is entitled to a commission.

[Did Mr. Peters start the train of incidents that originally led up to the taking of the title by Mr. Price? If the sale was the consummation of the events beginning with the sign "For sale" on the property, and the eventual purchase by Mr. Price, I say, if Mr. Peters was the acting cause in producing that series of events, that chain of incidents that led from the very inception up to its conclu-

sion in the purchase, he is entitled to his commission. If he did not so do, your verdict will be the other way.] [3]

I am asked to charge on some points by the defendant.

2. A broker's employment may be terminated at any time.

That is true, it does not endure forever, but nevertheless it endures for the time the negotiation is going on, unless there is some incident so sharply defined as to separate entirely and disconnect the relationship. The owner of the property cannot go to the broker and say, "You are discharged unless you get Mr. Price now to come and agree to this matter, or you have got to get a customer now;" you cannot keep the broker out of commission by saying, "We will relieve you by selling it ourselves." That is not what is meant by this. It can be terminated, but it has to be terminated in the natural order of things, and not if there is a purposeful intention back of it. [4]

The last point I will refuse and will not read.

The last point refused and not read by the court is, under all the evidence, your verdict must be for the defendant.

[Mr. Kaufman: I will ask the court to charge the jury as to the weight to be given to the plaintiff's own witness, Mr. Price, when he testifies that Mr. Peters had nothing to do with consummating the contract.

The Court: Yes, they will take Mr. Price's statement with what preceded it. Mr. Price cannot dispose of Mr. Peters' right to commission by mere mood of mind or by temptation to get the property at a lower price. That cannot affect the rights of this man in the least if such he has.] [6]

Mr. Kaufman: I will ask for an exception to the refusal of the last point and to the qualification of the first point: also the remarks as to the weight of the testimony of Mr. Price.

Exceptions allowed.

[Counsel for plaintiff being about to hand to the jury a

calculation in which is calculated one per cent on $13,800, being the total consideration money and interest, Mr. Robinson objects to that calculation going to the jury on the ground that the plaintiff is only entitled to a commission on $11,800, and not $13,800, as there is an existing mortgage of $2,000. The court states that the plaintiff, if entitled to a verdict, is entitled to commissions on the whole amount.]

Exception for defendant. [7]

Verdict and judgment for plaintiff for $409.94. Defendant appealed.

*Errors assigned* were (2, 3, 4, 6, 7) above instructions, quoting them.

*John G. Kaufman,* with him *V. Gilpin Robinson,* for appellant.—Peters has not proved that his acts were the procuring cause of the sale: Burchfield v. Griffith, 10 Pa. Superior Ct. 618; Kifer v. Yoder, 198 Pa. 308; Shepler v. Scott, 85 Pa. 329; Earp v. Cummins, 54 Pa. 394; Barber v. Miller, 41 Pa. Superior Ct. 442.

*Owen J. Roberts,* with him *Robert T. McCracken,* for appellee.—The case was for the jury: Keys v. Johnson, 68 Pa. 42; Hartley v. Anderson, 150 Pa. 391; Gibson's Est., 161 Pa. 177; Showaker v. Kelly, 21 Pa. Superior Ct. 390; Plant v. Thompson, 42 Kans. 664 (22 Pac. Repr. 726).

OPINION BY HENDERSON, J., March 3, 1911:

The evidence shows very clearly that Mrs. Holmes placed her property in charge of the plaintiff for sale and that the latter put a sale sign on the property and conducted negotiations looking to a sale. This was in March, 1898. In April following, the plaintiff wrote to Mr. Price about the property. Price had seen Peters' sign on the premises and subsequently called at the latter's office where he examined plans and photographs of the property and sought information as to whether it could be divided.

Price called again at the plaintiff's office and discussed the subject of a sale of a part, at which time he informed the plaintiff that he had talked with Mrs. Holmes in regard to the purchase of a part of the land, but that she declined to divide it. The plaintiff had subsequent interviews with Mrs. Holmes and presented the subject of a sale of a part to her and in December wrote to inquire about the prospects of a sale to persons whom he had referred to her. On February 1, 1902, Mrs. Holmes wrote to Mr. Peters that she had sold about six and one-half acres to Mr. Walker and that for the remaining twelve acres her price was $14,000. In this letter she expressed the hope that the plaintiff would be able to sell the place "this spring" and on the sale to Walker she paid the plaintiff his commission. On March 1, the plaintiff received a letter from Mr. Robinson, attorney for Mrs. Holmes in which he was informed that unless he notified the writer of the letter at once that he had a prospective purchaser Mrs. Holmes would withdraw the property from his hands. Two weeks later the plaintiff wrote to Mr. Robinson that he had no definite offer to submit but had named the offer "to many, amongst them Mr. Price" and informing him that if the property should be bought by any one to whom he had referred it he would claim his commission. To this letter there was no reply. At this time Mr. Price was considering a purchase of the property and early in April he agreed to buy and a deed was subsequently delivered to him. Numerous assignments of error are presented but the controversy is within narrow limits. The plaintiff claims compensation as a real estate broker on the sale of the twelve acre lot and bases his claim on the fact that he brought the property to the notice of the purchaser and his agency thereby became the procuring cause of the sale. It is not material that the sale was made directly with the owner, if the broker brought the parties together and a sale resulted from the broker's intervention. When a broker is duly authorized to sell property by private sale and has commenced negotiations with a pur-

chaser the owner cannot while such·negotiation is pending take it into his own hands and complete it either at or below the price first limited and then refuse to pay the commission: Keys v. Johnson, 68 Pa. 42; Reed's Executors v. Reed. 82 Pa. 420; Hartley v. Anderson, 150 Pa. 391; Gibson's Estate, 161 Pa. 177. Considering the evidence in the light of these adjudications the question here is obviously one of fact to be determined by the jury. That question is, did the acts of the plaintiff result in a sale of the property to Mr. Price. Was the plaintiff the procuring cause of the sale? The plaintiff's evidence evidently led the jury to conclude that the negotiation which was pending between him and Mr. Price for a sale of part of the property before the purchase of a portion by Walker was taken up by Mrs. Holmes and continued to a conclusion the consequence of which result would be the liability of the vendor for the plaintiff's commission. We cannot regard it as the duty of the court to state to the jury that Peters had abandoned the matter of a sale to Price. The engagement of the plaintiff was recognized by Mrs. Holmes until a short time prior to the sale to Price and she was negotiating with the latter when the letter of Mr. Robinson to the plaintiff was written. It is true Mr. Price testified that all the negotiations leading up to his purchase of the property were conducted with Mr. Robinson and that Mr. Peters had nothing to do with the purchase. By this the witness probably meant that when he determined to buy the property for himself he carried out the purpose with Mr. Robinson, the attorney of Mrs. Holmes. But this does not take into consideration the examination of the property which he had made as he says on account of the Rose Valley Association in connection with which the witness first examined and considered· the property. If the witness acting in one capacity considered the purchase of the property as an agent and afterward while the property was in the hands of the broker concluded to buy on his own account and dealt with the owner directly or with the owner's attorney the broker would not neces-

sarily be precluded from recovering his commission on
that state of facts. Much of the evidence was oral and the
jury was the tribunal to determine its weight and effect.
The portion of the charge set forth in the sixth assignment
of error has reference to this testimony of Mr. Price and
although it is stated by the learned counsel for the appel-
lant to be "our most vital complaint in the charge of the
court" it can hardly be regarded as reversible error when
read in connection with all the testimony offered by the
plaintiff. If Mr. Price's attention was brought to the lot
by the plaintiff and the negotiation with reference thereto
had not terminated and he concluded to deal directly with
the principal rather than the broker he could not by such
conduct defeat the broker's claim for commission and this
is what the learned trial judge had reference to in saying
that "Mr. Price cannot dispose of Mr. Peters' right to
commission by mere mood of mind." The reference to
temptation to get the property at a lower price was sug-
gested to the court by the fact that although the owner
had fixed the price at $14,000 she finally sold to Price for
$13,800. Whether he thus intended to avoid the cost of
the commission or whether he preferred to deal directly
with the owner or her attorney rather than with the broker
would not necessarily affect the plaintiff's position. He
might still recover if he was the moving cause in bringing
about the sale.

The price of the property was $13,800. A mortgage of
$2,000 existed against the premises and it is contended
that the court erred in permitting a computation of the
commission on the value of the property without making
allowance for the $2,000 incumbrance. But it is perfectly
clear that the vendor sold property of the value of $13,800.
What she did with the purchase money was a matter of
no concern to the plaintiff. It happened in this case that
it was necessary for her to apply $2,000 of it to a debt
charged against her property but it was of no consequence
whether the indebtedness was a lien or not so far as the
plaintiff was concerned. If she had taken the whole of

the price and applied it to debts which she owed, while that would have exhausted the proceeds of the land she would still be liable to the plaintiff if he procured the sale to be made.

There is no evidence that Clarence C. Peters, the witness for the plaintiff, was a partner with the plaintiff in his brokerage business and the court would not have been justified therefore in striking out the testimony of that witness. After a consideration of the whole case we do not find any error in the trial which would require a reversal of the judgment.

The judgment is affirmed.