# Irons *v.* Snyder, Appellant.

*Appeals—Assignments of error—Charge—Evidence.*

1. Assignments of error are an essential part of the pleadings in the appellate court, and as such should be so complete in themselves as not to require reference to other parts of the record to ascertain the grounds of the appeal.

2. An assignment of error which purports to be a quotation from the charge of the court, but which is not, either in form or substance, will not be considered.

3. An assignment of error is fatally defective if it incorrectly quotes the evidence to which it refers.

4. Where special instructions were not asked for at the trial, and particular error of law or material misstatement of the evidence cannot be pointed out, the court will be reviewed on the general effect of the charge and not upon sentences or paragraphs disconnected with the context which qualifies and explains them; if, as a whole, the charge was calculated to mislead there is error in the record, if not, there is none.

*Principal and agent—Real estate broker—Commissions.*

5. An agent employed to secure a purchaser of real estate has earned his commission when he procures a party with whom his principal actually contracts.

6. Where an owner of land places his property in the hands of an agent for sale, and there are incumbrances upon the land, the agent has nothing to do with the removal of the incumbrances. He does not lose his right to commissions simply because the owner of the land is unable to procure a release or discharge of such incumbrance.

Argued Nov. 23, 1911. Appeal, No 71, April T., 1911, by defendant, from judgment of C. P. Beaver Co., March Term, 1909, No. 171, on verdict for plaintiff in case of Joseph M. Irons v. Alfred L. Snyder. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD, BEAVER and PORTER, JJ. Affirmed.

Assumpsit to recover commissions for the sale of real estate.

At the trial the jury returned a verdict for plaintiff for $741.51.

On a rule for a new trial HOLT, P. J., filed the following opinion:

In this case the plaintiff sued to recover from defendant $1,155, with interest from April 25, 1907, for real estate commissions for selling a certain tract of land owned by the defendant in Hopewell township. Upon the trial of the case, however, the plaintiff verbally relinquished all of his claim save three per cent on the amount of the sale.

The plaintiff has testified, that in the year 1906 he entered into a parol contract with the defendant to sell a tract of land containing about thirty-five acres, owned by the defendant, and situated in Hopewell township, at the rate of $250 per acre; and that at the time of the contract nothing was said about the amount of commissions he was to receive. During the following year, 1906, the plaintiff was a duly licensed real estate broker. He testified that in the month of April, 1907, he brought the attention of two persons by the name of Stewart, and another person by the name of Phillips, to this real estate, telling them that he had it for sale, and that he took them out to the property and exhibited it to them, and that later he accompanied them to the property, where they met the defendant and talked over the matter of the deal for the property. Between the date of the plaintiff's alleged contract with the defendant for the sale of the property, and the time the plaintiff says he met the Stewarts and Phillips in relation thereto, real estate had greatly increased in value in the neighborhood, and the land was worth $600 an acre instead of $250 per acre. The plaintiff has testified that he, at the solicitation of these parties, or some of them, wrote to the defendant and ascertained from him the price at which he would sell the property, and that the defendant said he would take $600 per acre for the land. This fact the plaintiff says was to have been communicated by him to the said Stewart and Phillips by letter. He admits that he did not write to them telling them the price, but that he informed them later, when they came to his office and asked him to accompany them

out to see Mr. Snyder. Following this information, according to the plaintiff's testimony, he accompanied these prospective purchasers to the land, where they met Mr. Snyder in relation thereto. There was a widow's dower on the property, and this necessitated some delay in the negotiations; and after this meeting, which occurred upon the land in question, it seems that the negotiations were conducted directly between the prospective purchasers and the defendant. A contract in writing was entered into between the defendant and the intending buyers for the sale of the land at $600 per acre, the widow's dower to be released. The defendant was unable to secure a release of the dower; and thereupon the Stewarts and Phillips refused to take the property, but sold it to Jones and Laughlin, who took it subject to the dower.

The defendant takes the position that he did have a contract with the plaintiff for the sale of the property, in the year 1906, at the rate of $250 per acre, but that said contract was to continue for thirty days only, and that it had expired long prior to the time that the said contract was made with the Stewarts and Phillips. He also denies that the plaintiff, after the expiration of thirty days from the making of his contract with the defendant, acquired any extension of time, or further contract to sell the defendant's property. He also denies that the plaintiff called the attention of these prospective purchasers to the said property, or that he introduced or was the means of bringing the Stewarts and Phillips and the defendant together in relation to said property. The defendant has testified that all the negotiations were conducted between himself and the Stewarts and Phillips without any aid or assistance from the plaintiff. He denies all liability to the plaintiff for commissions. The defendant is corroborated in his testimony to a certain extent by both the Stewarts and the Phillips. They have testified that the plaintiff told them that he did not have the defendant's property for sale, and that he stated to them that it could not be sold for the reason that there was a widow's dower

on it.  At page 17 of the notes of the testimony, the defendant admits that on the evening of April 25, 1907, which was the day the Stewarts and Phillips came with the plaintiff to his property, he spoke to him about the price of the property, and that the plaintiff was at that time claiming a commission.  The defendant's testimony in this respect is as follows: "Q. When did you get the first intimation that Mr. Irons was claiming any commission out of this?  A. The evening of the same day, April 25. Q. The day that you met the Stewarts and Phillips on the premises?  A. Yes, sir, that evening about five o'clock he came up the road where I was working, and talked a little bit about other things, and then he asked me if I had got a letter from him, and I told him I had; and he said, 'Was the price right?' and I said, 'Who gave you any price?' and he said nobody had but he had taken it off Roseburg's property at Sheffield; that Roseburg asked $600 an acre, and he thought he would ask that for mine; and I said, 'Do you expect anything out of this?' and he said, 'Three per cent, because it is a large deal;' I said, 'It is no time to talk about that: I arranged with Mr. Phillips to meet me here, and I met Mr. Phillips and his partners here to-day, and it is my arrangement and my deal; and I will give no commission to nobody while this deal is on.'  And he just turned and hit his horses with the whip and went down the road, and that is the last he said about it until he sent me a bill for commission for three per cent, for $630, on January 3.  And on April 1, three months later, he sent in a bill for five per cent, for $23,000.  Q. Who sent that? A. His attorney, Mr. McConnel."

The jury rendered a verdict in favor of the plaintiff for $741.51.  The defendant has made motion for a new trial, assigning in support thereof the following reasons:

1. The verdict was against the overwhelming weight of the testimony.

2. There is no testimony in the case to support the verdict.

3. There was not sufficient proof of a contract to justify

the court in submitting the question of a contract to the jury, or to justify the verdict rendered by the jury.

The following additional reasons in support of the motions have been filed:

1. The court erred in stating to the jury that he, Joseph Irons, the plaintiff, did communicate with Mr. Snyder and then communicate with the prospective purchaser by letter. He also says that after he wrote the latter communication, W. H. Phillips came down and went out to the Snyder property. (While the facts and testimony show that Irons did not write to either Phillips or Snyder, and that Phillips came down because Irons had not written.)

2. The court erred in saying to the jury, "If you find that the plaintiff did introduce these prospective purchasers to the defendant, and they were willing to take the property on terms, etc., then the plaintiff would be entitled to commissions." There being no evidence in the case that he introduced them or that they ever met in pursuance of any arrangement made by Irons.

3. The court erred in instructing the jury that the facts of a widow's dower being on the place, which had to be released, had nothing to do with the plaintiff's rights to commission, when Irons himself knew of, and had informed the purchasers of the fact.

4. The court erred in affirming the second point requested to be charged by the plaintiff, there being no evidence in the case to justify the point.

5. The court erred in excluding and not receiving in testimony exhibit No. 5 to be followed by evidence that no sale was made thereon.

6. The court erred in excluding the deposition of Mrs. Mary Snyder.

7. The court erred in submitting the case to the jury, there not being sufficient evidence to support a finding for the plaintiff by the jury.

8. The court erred in saying to the jury, that the plaintiff said that Mr. Snyder, the defendant, and some of the

other prospective purchasers, and the plaintiff went to the home of Tom Snyder to get the deed that concerned this land, and to learn something about the dower.

In view of the facts which we have already mentioned, and upon an examination of the notes of testimony, we are clearly satisfied that it was our duty to submit the case to the jury.

There was no request for binding instructions in favor of the defendant at the time of the trial. Counsel for the defendant must have been convinced of the fact that it was a case for the jury. When we take into consideration the number of witnesses who testified against the plaintiff, it would seem that so far as numbers are concerned the weight of the testimony was with the defendant. The prospective purchasers contradicted the plaintiff in many respects, and the defendant's testimony was contradictory of the facts testified to by the plaintiff. It was for the jury to weigh the testimony of these witnesses. The Stewarts and Phillips were all, in a sense, interested witnesses, for the reason that they admitted when they were on the stand that they refused to carry out their contract with Snyder for the purchase of this property, for the reason that Snyder was unable to procure a release of the dower, and that they thereupon became the agents of the defendant to make sale of the property, themselves, for a commission, and that they did sell the property to Jones & Laughlin, obtaining a commission, or at least having an agreement for a commission for such sale. This was the second trial of the case. The first jury disagreed, and was discharged. This we think disposes of the first and second reasons assigned in support of the motion. Under the evidence we were undoubtedly required to submit the case to the jury to determine whether or not there was such a contract between the plaintiff and the defendant as testified to by the plaintiff. We distinctly told the jury that unless the plaintiff had satisfied them by the weight or preponderance of the evidence that he did have a contract, which was in force at the time of the alleged

sale, he could not recover; and that if the contract was as alleged by the defendant the plaintiff could not recover. Upon an examination of the notes of testimony we find that we were in error in stating to the jury that the plaintiff testified that he communicated with the prospective buyers by letter after he learned from the defendant the price of the property, and that W. H. Phillips, after the plaintiff wrote him the letter, came down and went out to the Snyder property. The plaintiff did testify, that he did write to Snyder after he met these prospective purchasers and obtained the price, and that after W. H. Phillips went down he informed him verbally of the price. While this was an incorrect statement, in part, of the evidence of the plaintiff, we do not think that the jury was misled by the statement, for the reason that we distinctly told them in the charge that if we had made any misstatement of the evidence they should correct the court, as they were not bound by any statement which the court might make in relation to the evidence, unless it was a correct statement.

In the second additional reason the defendant alleges error on the part of the court in saying to the jury that if they should find that the plaintiff did introduce these prospective purchasers to the defendant, and they were willing to take the property on terms that were satisfactory to the defendant, then the plaintiff would be entitled to commission. We think this is a correct statement of the law. "A real estate broker has earned his commission when he has introduced the purchaser to his employer; it is not his business to make the bargain:" Keys v. Johnson, 68 Pa. 42.

"A real estate broker has earned his commission when he has introduced a responsible purchaser to his principal, who is ready to buy at the price named by the latter:" Clendenon v. Pancoast, 75 Pa. 213.

"When a broker has brought the parties together and the meeting has resulted in a contract, the broker is entitled to his commissions:" Holmes v. Neafie, 151 Pa 392.

"An agent employed to secure a purchaser of realty has earned his commission when he procures a party with whom his principal actually contracts:" Hipple v. Laird, 189 Pa. 472.

While we used the word "introduced," yet it would have to be taken in connection with the charge as a whole. An introduction would surely mean the bringing of the parties together, by causing them to meet in relation to the subject-matter; whether there was a formal introduction of the parties according to a particular set form of words, or a mere meeting on the land in relation to it, where such meeting is brought about by the agent, we take it would not make any difference. It is the bringing of the parties together by the agent that enables him to have commissions, if the principal and the parties introduced subsequently deal upon terms satisfactory to the owner of the land, that entitles the real estate agent to commissions.

Where an owner of land places his property in the hands of an agent for sale, and there are incumbrances upon the land, the agent has nothing to do with the removal of the incumbrances. He does not lose his right to commission simply because the owner of the land is unable to procure a release or discharge of such incumbrance; in the absence of a contract that the agent shall not receive commissions unless the owner shall be able to procure a release or discharge of existing incumbrances: Fenn v. Dickey, 178 Pa. 258.

In view of the authorities we have already cited we do not think there was error in affirming the plaintiff's second point.

We did receive in evidence exhibit No. 5, but refused to admit evidence offered by the defendant for the purpose of relieving him from the payment of commission to the plaintiff, on the ground that the contract was not carried out because of his failure to procure a release of the dower. In this we are not convinced that we were in error. When the defendant made the contract with the plaintiff, if he did make a contract with him, to sell the property, he

knew of the existence of the dower estate and he entered into the contract in writing with the prospective purchasers to have the dower released.

The sixth additional reason alleges error on the part of the court in excluding the deposition of Mrs. Mary Snyder. Rule No. 111, of the court of common pleas of Beaver county, reads as follows: "Depositions (other than those taken on commission) shall be filed within a reasonable time and notice thereof given by the party to the adverse party or his attorney; or the party at whose instance they were taken may retain their custody, provided a true copy of the rule, notice and deposition, and of the papers and exhibits attached thereto, if any, be given to the opposite party or his attorney within a reasonable time; and if notice of the filing or a copy be not given as aforesaid the deposition shall not be read." The deposition appears from the record to have been filed November 19, 1909, and notice of the filing was not given until March 28, 1910. Counsel for the plaintiff objected to the deposition for the reason, among others, that notice of filing of the deposition had not been given in accordance with the rule of court. We think the objection was well taken because of noncompliance with this rule.

The seventh additional reason alleges error on the part of the court in submitting the case to the jury. As we have already said, we think there was sufficient evidence to warrant us in submitting the case. There was no motion for a compulsory nonsuit, and no motion for binding instructions in favor of the defendant.

The eighth additional reason assigned, is that the court was in error in stating to the jury that the plaintiff said that Mr. Snyder, the defendant, and some of the prospective purchasers and the plaintiff, went to the home of Tom Snyder to get a deed that concerned this land, and something about the dower. There was testimony given by the plaintiff to the effect that he and some of the prospective purchasers went to the home of Tom Snyder to see about the deed for the property, and to learn something about

the dower. If we did not correctly state the evidence in this respect, we again say that we do not think the jury was misled by it; for the reason, as above stated, that we positively instructed the jury that if we had made any misstatement of the evidence they should correct the court. This reason is, therefore, not sustained.

We are not satisfied that there is any merit in any of the reasons assigned by the defendant in support of the motion for a new trial.

The plaintiff seeks to recover on a quantum meruit; that is, for the usual and customary commissions, but upon the trial verbally relinquishes all of his claim in excess of three per cent of the amount of the sale. We think a release in writing should be filed of record.

As we view the case, there are but two material points in it, and both are for the consideration of the jury: (a) Whether or not the plaintiff had a contract with the defendant for the sale of his property, which was in existence at the time of the alleged sale; and (b) whether or not the plaintiff brought the parties together in relation to the subject-matter, and which resulted in the making of a sale upon terms satisfactory to the defendant. New trial refused.

*Errors assigned* were in the following form:

The court erred in instructing the jury as follows:

1. That he, Joseph Irons, the plaintiff, did communicate with Snyder and then communicate with the prospective purchaser by letter. He also said that after he wrote the latter communication, W. H. Phillips came down and went out to the Snyder property. Irons neither wrote to Phillips or Snyder and Phillips came down because Irons had not written.

2. The court erred in saying to the jury, "If you find that the plaintiff did introduce these prospective purchasers to the defendant, and if they were willing to take the property on the terms, etc., then the plaintiff would be entitled to commissions." There being no evidence in the

case that he introduced them or that they ever met in pursuance of any arrangement made by Irons.

3. The court erred in instructing the jury that the fact of a widow's dower being on the place which had to be released had nothing to do with the plaintiff's rights to commission, when Irons himself knew of and had informed the purchasers of that fact.

4. The court erred in excluding the offer in evidence of the agreement marked "Exhibit No. 5," which agreement and offer and ruling of the court thereon are as follows:

### OFFER.

The defendant offers to show by the witness on the stand and to be followed by other witnesses, that they never were the purchasers of this property; that the defendant in this case was unable to comply with the agreement, and that it was simply an option, and that instead of becoming purchasers under that agreement, the agreement which we propose now to offer in evidence was never fulfilled, and that Stewart and Phillips, the parties to whom Mr. Irons claims to have sold the land, never were the purchasers of the land from the defendant in the suit, but that afterwards, after they could not comply or fulfill the terms of the agreement under which Stewart and Phillips were to purchase, that then they took the property as agents, from the defendant in this suit, and sold the same to Jones and Laughlin, without any connection with Mr. Irons in the transaction.

Objected to as irrelevant and immaterial.

### RULING OF THE COURT THEREON.

It not being contended on either side of the case that the release of the dower was a condition imposed at the time of the alleged contract of agency, or ever afterwards assented to by the plaintiff, we think that the failure of the defendant to procure a release of the dower would not affect the plaintiff's right to recover, and the objection is therefore sustained, and the evidence excluded. A bill of exceptions is sealed to the defendant.

5. The court erred in saying to the jury that the plaintiff said that Mr. Snyder, the defendant, and some of the other prospective purchasers and the plaintiff went to the home of Tom Snyder to get the deed that concerned this land, and to learn something about the dower.

6. The court erred in charging the jury as requested in the second point by the plaintiff, as follows: "A real estate agent is entitled to be paid the commission when he finds a buyer whose terms are acceptable and agreed to by the seller." There being no testimony in the case sufficient to justify the affirmants of this point.

7. The court erred in submitting the case to the jury, there not being sufficient evidence to support a finding for the plaintiff.

*A. P. Marshall*, with him *W. J. Mellon*, for appellant.

OPINION BY ORLADY, J., March 1, 1912:

The assignments of error are an essential part of the pleadings in this court, and as such should be so complete in themselves as not to require reference to other parts of the record. When the case is disposed of and the record returned to the court below, the præcipe, assignments of error and plea thereto, are all the papers that usually remain of record in this court as the basis of our judgment or decree, as the case may be. It must be obvious, therefore, that each specification of error, should in and of itself, present the question we are called upon to decide, is the language of Judge STERRETT, in Landis v. Evans, 113 Pa. 332, and repeated in North Mountain Water Co. v. Troxell, 223 Pa. 315. Taken in connection with the question involved, they should set forth the grounds upon which the appellant complains of the action of the court below, so that the appellate court will not be compelled to go to the argument of counsel to ascertain the grounds of the appeal: International Savings and Trust Co. v. Kleber, 29 Pa. Superior Ct. 200.

Each of the rules of the appellate courts is important

and they must be enforced to insure uniformity in practice, and when violated the appeal may be quashed either on request of the appellee, or by the court of its own motion: there cannot be any excuse for violating or ignoring them.

The first assignment purports to be a quotation from the charge of the court, which it is not, either in form or substance. Rule XV is mandatory in its requirements and this assignment cannot be considered.

The same objection lies to the third, fifth and sixth, in not literally following our rules XV and XVI.

The fourth assignment is fatally defective in violating rule XVI, and in incorrectly quoting the evidence to which it refers. The part omitted being an important element in considering the offer and ruling of the court thereon. See Spring City Brick Co. v. Machine Mfg. Co., 39 Pa. Superior Ct. 7; Com. v. Lenhart, 40 Pa. Superior Ct. 572; Simpson v. Carroll, 41 Pa. Superior Ct. 343; Haley v. Chemical Co., 224 Pa. 316; Com. v. Volquarts, 36 Pa. Superior Ct. 199; Winnett v. Gas Co., 37 Pa. Superior Ct. 204; Com. v. McKwayne, 221 Pa. 449.

Where special instructions were not asked for at the trial, and particular error of law or material misstatement of the evidence cannot be pointed out, the court will be reviewed on the general effect of the charge and not upon sentences or paragraphs disconnected with the context which qualifies and explains them: if as a whole, the charge was calculated to mislead there is error in the record, if not, there is none: Rider-Ericsson Engine Co. v. Fredericks, 25 Pa. Superior Ct. 72; Com. v. Dehle, 42 Pa. Superior Ct. 300; Columbia Glass Co. v. Glass Co., 43 Pa. Superior Ct. 367; Anspach v. Christman, 44 Pa. Superior Ct. 99; Com. v. Simon, 44 Pa. Superior Ct. 538.

After an examination of the whole record, we are satisfied that the opinion of the court below in refusing a new trial, fully and fairly disposes of every question raised, and affirm the judgment for the reasons given therein.