## Arnheim, Inc., v. Sunray Laundry, Inc., et al.

*Harold R. Schmidt* and *Rose, Eichenauer, Stewart & Rose,* for plaintiff.

*Joseph A. Rubinstein* and *Samuel M. Rosenzweig,* for defendants.

SOFFEL, J., February 5, 1950.—This case comes before the court on motion ex parte defendant, Sunray Laundry & Dry Cleaning, Inc., for judgment non obstante veredicto.

Stanley W. Arnheim, Inc., a Pennsylvania corporation, brought suit in assumpsit against Sunray Laundry & Dry Cleaning, Inc., a Pennsylvania corporation, and Nicholas J. Nigro to recover real estate broker's commission. The jury returned a verdict in favor of plaintiff and against corporate defendant in the sum of $2,125, without interest.

At the close of plaintiff's case a motion for compulsory nonsuit was made and refused, and at the conclusion of all the testimony, defendant presented a point for binding instructions, which was refused. The motion for judgment non obstante veredicto is predicated upon the failure of the trial judge to grant these motions.

The facts may be summarized as follows:

In October 1946 defendant Nigro inserted an advertisement in the Pittsburgh Press for the purpose of obtaining a tenant or purchaser for certain buildings located at 7132-36 Susquehanna Street, Pittsburgh, Pa. At that time a part of the premises was occupied by Sunray Laundry and Dry Cleaning, Inc., the other defendant. As a result of this advertisement, Paul O. Neely, a real estate broker employed by plaintiff corporation, contacted defendant. Mr. Neely made one trip to defendant's buildings, where a conversation was had with Mr. Nigro, who quoted prices. Nothing further was done by plaintiff, acting through its agent, until June 1947. On March 27, 1947, defendant Nigro entered into a lease agreement with M. G. Nevins for a portion of the buildings in question. The lease, which is in evidence, contains a 30-day sales clause and an option to purchase. The option clause provides that the lessee shall have the first option to purchase the building at a price equal to the highest price offered by any purchaser.

In June 1947 plaintiff contacted defendant and informed him that he had an inquiry by a prospective

purchaser of the buildings and plaintiff called at the buildings, and at that time ascertained that there was a tenant in the premises. After considerable negotiation, plaintiff brought prospective purchasers and defendant together at the office of defendant's attorney, Joseph A. Rubinstein, for the purpose of entering into an agreement of sale at a purchase price of $57,500. Plaintiff, through its authorized representative, Mr. Neely, was present at the meeting at the office of Mr. Rubinstein on a date during the end of June 1947. At this meeting there were present defendant Nigro, his attorney, Joseph A. Rubinstein, the three prospective purchasers, their attorney, Edward Goldberg, and Mr. Neely, plaintiff's agent. At this meeting the details of the transaction were thoroughly discussed and the matter of the tenant's option was considered, as a result of which an agreement of sale was prepared by the attorneys. The agreement included a paragraph making the sale dependent upon and contingent upon any action which might be taken by the tenant of the premises with respect to his option. This agreement of sale was executed by the parties on July 8, 1947.

Immediately thereafter, a notice was sent to the tenant by defendant, in accordance with the option clause, giving the tenant 30 days' notice that a bona fide offer had been made for the real estate in the amount of $57,500. As a result of this notice, the tenant, M. G. Nevins, purchased the real estate for $57,500.

One of the clauses in the agreement of sale of July 8, 1947, between defendant and the prospective purchasers provided for a $5,000 deposit as hand money, which hand money was retained and kept in the possession of plaintiff. After the premises were sold to the tenant, defendant informed plaintiff and directed plaintiff to return the hand money to the prospective purchasers mentioned in the agreement of July 8, 1947. Plaintiff immediately returned the hand money to

prospective purchasers and at that time raised no question about retaining any part of it as a broker's commission.

Defendant's motion for judgment n. o. v. raises this question: Is plaintiff entitled to a real estate broker's commission where the agreement of sale is expressly conditioned upon a thirty-day option clause in favor of an existing tenant who exercises the option?

In considering a motion for judgment n. o. v. we must view the record in the light most favorable to plaintiff and give it the benefit of every fact and inference of fact properly deducible from the evidence: Walters v. Kapiris, 159 Pa. Superior Ct. 170; Bowser v. Kuhn, 160 Pa. Superior Ct. 31; DiGregorio v. Skinner, 351 Pa. 441.

The rules of law applicable to the present controversy are well settled. They are aptly stated in Vol. 2, Ladner's Real Estate Conveyancing, page 517, et seq.

When the broker's contract of employment is the ordinary or customary one, whereby the broker is employed to secure a purchaser, he is considered as having earned his commission when he procures a party with whom his principal is satisfied, or who actually contracts for the property at a price satisfactory to the owner without reference to the outcome of the transaction: Lieberman et al. v. Colahan, 267 Pa. 102 (1920); Mearkle & Bros. v. Kellerman, 82 Pa. Superior Ct. 11 (1923). In such case it makes no difference why the agreement of sale is never carried out. Whether because the purchaser refuses to make settlement (McKinney & Co. v. Smith, 85 Pa. Superior Ct. 525 (1935); Hipple v. Laird, 189 Pa. 472 (1899); Folsom v. Slattery, 54 Pa. Superior Ct. 350 (1913)); or because vendor's wife refuses to join in the deed (Noon et al. v. Rodstein, 89 Pa. Superior Ct. 153 (1926)); or because parties in interest other than the seller refuse to join in the sale (Aber to use v. Penn-

sylvania Co. for Insurance on Lives, etc., 269 Pa. 384 (1921) ) ; or because the owner, through no fault of his own, is unable to secure a release of encumbrance so as to convey the kind of title agreed on: Irons v. Snyder, 49 Pa. Superior Ct. 522 (1912). For in all these instances the broker has earned his commissions when he produced a purchaser whom the owner accepted or with whom he contracted.

So also the broker has earned his commission if he produces to his principal a person ready, able and willing to contract at the price fixed by his principal, notwithstanding the refusal of the principal to sign the agreement of sale. (Wilson v. Hays, 283 Pa. 271 (1925); Burchfield v. Griffith, 10 Pa. Superior Ct. 618 (1899); Miller v. Kenneck, 20 Dist. R. 706 (1911) ), for in such case the broker has done what he contracted to do, namely, procure a purchaser.

The broker's services however must be the efficient cause of the sale: Bossart v. Erie Coal Mining Co., etc., 276 Pa. 63 (1923). Yet where a sale has resulted from the efforts of the broker, even though they amounted to a mere introduction of the property to the buyer (Lamb v. Elder, 56 Pa. Superior Ct. 522 (1941) ), or brought to the buyer's attention by advertisement of the broker or by his sign (Peters v. Holmes, 45 Pa. Superior Ct. 278 (1911) ), he is, nevertheless, entitled to his commissions: Keys v. Johnson, 68 Pa. 42 (1871). An owner cannot while negotiations are pending by his broker with a purchaser, take it in his own hands and complete the sale either above or below the price first mentioned and refuse to pay commission: Warne v. Johnston, 48 Pa. Superior Ct. 98 (1911) ; Peters v. Holmes, supra; Sowney v. Bair, 269 Pa. 448 (1921). Nor can the owner under such circumstances conclude the sale through a second broker and escape liability to the first, and the fact that by so doing, he renders himself liable to pay two commissions, is no defense:

Girsch v. Rolland, 285 Pa. 141 (1926). In other words, as picturesquely put in Davis v. Clark (25 Dist. R. 35 (1915)), "after one broker has shaken the tree, another cannot be permitted to run up and carry off the fruit; and if the owner allows this to be done, he is responsible to the first agent.

The effect and the principles to be gleaned from these decisions have been well summarized by Judge Patton in his refusal to take off a nonsuit in Thompson Company v. Goldman (51 Pa. Superior Ct. 632 (1912)), as follows:

Brokers in order "to recover their commissions . . . must show either, (a) 'That they had procured for the defendant a party with whom he was satisfied, and who actually contracted for the property at a price satisfactory to the owner'. (b) Or that it was through their efforts that the purchaser was secured to whom the defendant, after he wrongfully took the matter out of their hands, made the sale. (c) Or that even if they had not secured any binding contract from a proposed purchaser, they had actually produced to their principal a purchaser able and willing to perform his part of the proposal so that failure to complete an actual sale resulted alone from the fault or inability of the principal."

The fact that the vendor's ability to convey was subject to the existence of encumbrances or a spouse's right of dower or interest, or the necessity to secure the orphans' court permission, or similar disabilities is no defense to the broker's claim for commission: Irons v. Snyder, 49 Pa. Superior Ct. 522; Barrett v. King, 64 Pa. Superior Ct. 601; Smith v. Graham, 101 Pa. Superior Ct. 604; Aber v. Pennsylvania Co., etc., 269 Pa. 384.

It is contended by defendant that the instant sale was made subject to a contingency and that since the property was not sold to plaintiff's prospective pur-

chasers, the broker is not entitled to a commission: Osgood v. Standard Life Insurance Co., 88 Pitts L. J. 611; Kaufman's Estate, 67 Pa. Superior Ct. 456.

In Kaufman's Estate, supra, relied upon by defendant, the court held that no commissions could be recovered because the contract to pay commissions to procure a mortgage loan, which was to include an amount sufficient to pay off an existing mortgage, was conditional upon the consent of the mortgagee to accept payment of the existing loan; consequently no commission could be recovered if such consent was not procured. The condition there directly bound the broker. That situation is not analogous to the instant case. The condition in the sales agreement in the instant case was for the benefit of the seller and relieved him from going ahead with the sale to the prospective purchasers if his tenant exercised the option to purchase.

Plaintiff's agent brought to defendant purchasers ready, able and willing to buy at a price satisfactory to defendant. An agreement of sale was entered into, subject to the right of a tenant to exercise his option to purchase. That the tenant subsequently did exercise the option cannot defeat the broker's right to a commission.

Whether the broker was the efficient, procuring cause of the sale was a question to be determined by the jury under the circumstances of the instant case. The jury has resolved this in favor of plaintiff. Since there is evidence to support the jury's finding we are of the opinion that the verdict should stand.

Plaintiff earned its commission when it procured a purchaser with whom defendant entered into an agreement for the sale and purchase of the property: Advance Realty Co. v. McLeod, 84 Pa. Superior Ct. 558.

The motion for judgment n. o. v. will therefore be refused.